No. 20,396.

LILLIAN SMITH, *Appellee*, v. THE NATIONAL SASH & DOOR COMPANY, *Appellant*.

### SYLLABUS BY THE COURT.

WORKMEN'S COMPENSATION ACT — *Death of Son* — *"Dependent"* — *Evidence.* The plaintiff's son, eighteen years old, living with her and her husband, turned over to her his wages, paying nothing for his board, room or laundry but obtaining from her money for his expenditures. Although she was supported by her husband she had required certain medical and surgical attention, the expenses of which were paid in part by the deceased, and his wages were always available by her for such attention, all of which extra expense could be met only by using a portion of his earnings. *Held*, that she was partly dependent upon the son and could recover under the workmen's compensation act on account of his death.

Appeal from Montgomery district court; THOMAS J. FLANNELLY, judge. Opinion filed December 11, 1915. Affirmed.

*Thomas E. Wagstaff*, of Independence, *Adrian F. Sherman*, and *Thad B. Landon*, both of Kansas City, Mo., for the appellant.

*A. R. Lamb*, of Coffeyville, for the appellee.

The opinion of the court was delivered by

WEST, J.: This case is before us on the motion of the plaintiff to dismiss the appeal because it involves no doubtful question of law. But one vital question is presented—that of dependency—and as the matter has been fully briefed and argued on the motion it amounts to a final submission of the case on

the merits and will be so considered, as the parties have so treated it.

The plaintiff recovered as being partly dependent on her son, Arthur Lake, who was killed while working in the defendant's glass plant. He was eighteen years old, illegitimate, and had been earning eleven dollars a week. The third finding of fact was in substance that when Arthur was about four years old his mother married her present husband and has lived with him ever since; that until about two years prior to his death the boy had made his home with his grandmother, but about that time he began making his home with his mother; that the household consisted of the plaintiff, her husband, and this son; that at the time of his death she and her husband were living in a five-room house, paying ten dollars a month rental; that since the death she has received her support and maintenance from her husband, who has continued to pay therefor, furnishing the same house as before, "and that previous to the date of the death of the said Arthur Lake, the plaintiff was supported by her said husband, L. N. Smith, who at the time of the trial and for years prior thereto was receiving the sum of sixteen and $^{50}/_{100}$ ($16.50) dollars per week as his wages; and was a well, able-bodied man. That after the said Arthur Lake made his home with the plaintiff and her said husband, he turned over his wages each week to plaintiff, and also the husband turned over his wages each week to the plaintiff. That plaintiff was an invalid and had required surgical operations, the expenses of which were paid in part by the deceased, and the money of deceased left with the plaintiff each week was always available by plaintiff for medicines and surgical services, and all of these extra expenses could be met only by using a portion of deceased's earnings. That deceased paid no board or room rent and paid nothing for his laundry bill, but would obtain money for his expenditures from the plaintiff in this case. That at the time of Lake's death, the deceased was engaged to be married to a girl at Coffeyville, such marriage to occur the following October, 1914." The judgment was based on the conclusion that the plaintiff was in part dependent upon the earnings of the deceased to the extent of one-half his earnings.

52—96 KAN.

The language of the statute is:

" 'Dependents' means such members of the workman's family as were wholly or in part dependent upon the workman at the time of the accident. And 'members of a family' for the purposes of this act means only widow or husband, as the case may be, and children; or if no widow, husband or children, then parents and grandparents, or if no parents or grandparents, then grandchildren; or if no grandchildren, then brothers and sisters. In the meaning of this section parents include step-parents, children include step-children, and grandchildren include step-grandchildren, and brothers and sisters include step-brothers and step-sisters, and children and parents include that relation by legal adoption." (Laws 1911, ch. 218, § 9, subdiv. *j*.)

Section 11, after providing the amount of compensation in case the workman leaves any dependents wholly dependent upon his earnings, further provides:

"If the workman does not leave any such dependents, but leaves any dependents in part dependent upon his earnings, such proportion of the amount payable under the foregoing provisions of this section, as may be agreed upon or determined to be proportionate to the injury to the said dependents; . . ."

The defendant argues that there was no legal obligation upon the deceased to contribute to the support of his mother and that his turning over to her his earnings is not controlling, but that the real question is, Was she dependent either wholly or partially upon such contributions for her support and maintenance? and calls attention to the construction of "dependent" in *Modern Woodmen v. Comeaux*, 79 Kan. 493, 101 Pac. 1, approved in *Johnson v. United Workmen*, 91 Kan. 314, 317, 137 Pac. 1190; that the use of the word "injury" in the language quoted from section 11 indicates that there must be an actual pecuniary loss, and that the finding that since the death of the son the plaintiff has received her support and maintenance from her husband and that prior thereto she was supported by her husband makes it still more plain that she was not dependent upon the son and suffered no pecuniary injury by his death. In the Comeaux case "dependent" was held to involve a relation similar to that which usually exists between parent and child, husband and wife, or generally in the family relation. Numerous authorities are cited in support of these contentions and they have all been examined. If the findings were simply to the effect that the boy turned over his wages to his mother to keep until he could use them to establish a family of his own, no question of dependency could arise. But

Smith v. Sash & Door Co.

it appears from finding No. 3 that the mother in this case was an invalid who had required surgical operations, "the expenses of which were paid in part by the deceased, and the money of deceased left with the plaintiff each week was always available by plaintiff for medicines and surgical services, and all of these extra expenses could be met only by using a portion of deceased's earnings." We have, then, a condition of health requiring more than ordinary expense for medical and surgical attention, which required attention could be paid for only by using a portion of the boy's earnings. It amounts to this: By using some of the boy's wages the mother could be provided with necessary medical attention, otherwise she could not be thus provided and must suffer for want thereof, unless we assume, without basis, that such attention could be had without remuneration. To this extent, therefore, it seems quite clear that there was a condition of dependence. What sum should have been allowed on this account is not before us for consideration or determination.

The numerous cases cited present no parallel situation. However, the decision in *McLean v. Moss Bay Iron and Steel Company, Limited,* [1909] 2 K. B. Div. Law Rep. 521, in which it was held that a married woman with an illegitimate son living with her husband, not the putative father, was not dependent on the son although he turned over to her his wages, which were by her put into a common fund out of which the whole family was maintained, was overruled by the House of Lords in *Hodgson v. West Stanley Colliery,* [1910] App. Cas., Law Rep. 229. In the latter it was held that a mother and her surviving children were dependent on the father and two sons whose earnings formed a common fund, out of which the whole family was maintained, and that she was entitled to recover in respect to the death of each.

The defendant closes its brief with these words:

"Under all the circumstances, we think that there is a question to be presented here which calls upon the court to construe this statute, and the motion to dismiss the appeal should be overruled."

In view of the full presentation of the two opposing views of the statute and the conclusion reached thereon, it seems out of place merely to dismiss the appeal, for the question at issue is one deserving the careful consideration which it has received. And as nothing could be gained by further delay and nothing else remains to be presented, the judgment of the trial court should be affirmed, and it is so ordered.