No. 21,756.

JOHN McGARVIE and KATHERINE McGARVIE, *Appellees*, v. THE FRONTENAC COAL COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

COMPENSATION ACT—*Dependency of Parents on Son for Support—Insufficient Evidence.* The evidence examined and found insufficient to sustain a finding of plaintiffs' partial dependency on their 34-year-old son for support, and insufficient to justify a judgment against the son's employer for compensation on account of the son's death in the latter's employment.

Appeal from Crawford district court; ANDREW J. CURRAN, judge. Opinion filed October 12, 1918. Reversed.

*J. J. Campbell*, of Pittsburg, *G. W. Earnshaw*, of Joplin, Mo., for the appellant.

*Arthur Fuller*, and *W. J. True*, both of Pittsburg, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: The plaintiffs are the parents of Peter McGarvie, a coal miner, who met his death in the defendant's employment. Compensation for them was sought under a claim of their partial dependency on the deceased. The trial court found—

"From the evidence and admissions and pleadings that the earnings of the said Peter McGarvie for the year previous to his death was . . . $528.51, and that three times said amount was . . . $1,585.53. The court further finds from the admissions and evidence introduced in said cause that the said plaintiffs, John McGarvie and Catherine McGarvie, were partially dependent upon the earnings of the said Peter McGarvie, deceased, and that said partial dependency amounted to seventeen-twenty-

McGarvie v. Coal Co.

seconds ($^{17}/_{22}$) of the earnings of said deceased, and that said plaintiffs are entitled to recover of and from said defendant seventeen-twenty-seconds ($^{17}/_{22}$) of Fifteen Hundred Eighty-five and $^{53}/_{100}$ Dollars, the same being Twelve Hundred Twenty-five and $^{18}/_{100}$ ($1225.18) Dollars."

Defendant contends that these findings were not supported by the evidence.

The family consisted of the mother, who was housewife, the father, who earned from $95 to $105 per month, one daughter who earned $95 per month, another daughter who earned $25 per month, and the deceased son, who earned $528.51 per annum.

The son gave all his wages to his mother; that is, he intrusted them to her, and his mother gave him back from time to time what money he desired. The son paid his parents no stipulated amount for his board and lodging, and the father testified that he did not know whether the son gave his mother more than his board and lodging would amount to or not. The mother's testimony was to the same effect. She testified:

"Q. What did he do with his wages at that time? A. Well, gave them to me, always did.

. . . . . . . . . . .

"Q. And he always made his home with you? A. Yes, sir.
"Q. And he got his meals there? A. Yes sir.
"Q. Slept there? A. Yes sir.
"Q. Did you do his washing and mending and things of that kind? A. Yes sir.

. . . . . . . . . . . .

"Q. Now do you know, Mrs. McGarvie, how much he gave you from his wages during the last year of his life? A. No, I don't suppose I could tell what he gave me. He always gave me his wages.
"Q. Then would he ever take back any of it? A. Yes sir. If he wanted any, he always came to me and got the money.
"Q. When he would buy clothes, he would get the money from you? A. Yes sir, he came to me for his money because he left it with me.

. . . . . . . . . . .

"Q. He went to places of amusement? A. Yes sir.
"Q. And traveled on the street cars and paid those expenses out of his earnings? A. Yes sir.

. . . . . . . . . . .

"Q. Did he shave himself or get shaved at a barber shop? A. At the barber shop.
"Q. How often? A. Well, I think twice a week.

McGarvie v. Coal Co.

"Q. And wore good clothes, didn't he? A. Yes sir, he always wore good clothes.

"Q. And the money that he left with you there finally, Mrs. McGarvie, would be just about what his board, room, washing and mending and stuff of that kind would have cost him if he had been boarding? A. Well, I don't know. I guess it would, sometimes.

"Q. And when he was not working and out of employment for any reason his board and his lodging and his washing and his mending went on just the same? A. Just the same.

.    .    .    .    .    .    .    .    .    .    .    .    .

"Q. Mrs. McGarvie what was the habits of your son? Was he in the habit of spending much money? A. No, he isn't much of a saver but then he wasn't a great spender, he didn't save any, he gave it to me.

"Q. You got all of his money outside of his actual expenses away from the house? A. Yes sir.

"Q. And that, I understand you, wouldn't exceed over ten or twelve dollars a month? A. Yes sir.

"Q. Did he wear good clothes? Did he buy them ready made? A. He always wore good clothes.

"Q. Tailor made or ready made? A. Well, sometimes he would have them made, and sometimes bought them at the store.

"Q. He lived pretty well, didn't he? A. Yes sir, he did.

"Q. And had as many of the comforts of life as he could get? A. I guess so.

"Q. And Mrs. McGarvie $10.00 a month would be about $120.00 a year. That wouldn't clothe him would it? A. I didn't say that, whether it would or not.

"Q. He couldn't get one tailor-made suit for less than $40.00 or $50.00 could he? A. No.

"Q. And then outside of that he was pretty well supplied with clothing wasn't he? A. Yes sir.

"Q. Shirts? Collars? Underwear? Socks? Neckties? Hats? A. Yes sir.

"Q. And all those furnishings that a man of his age and his position would naturally want and naturally have? A. Yes sir."

Whatever was the basis for the trial court's determination that the son contributed $17/22$ of his earnings toward the maintenance of his parents, we are unable to find any support for it in the evidence. Perhaps there was some small balance of his wages in the hands of the mother, which might have been used for plaintiffs' support after deducting a fair allowance for the son's board, lodging, and washing, and after deducting the indefinite but substantial sums returned to the son for his clothing and other expenses, but clearly it could not amount to $17/22$ of the money intrusted to the mother by her son. The proof does

Hoffer v. Gas Co.

not show any contribution to his parents' support. The father and mother both frankly admitted they did not know whether the mother's receipts of money from the son ever exceeded a fair estimate for his board and lodging or not. In other words, the plaintiffs wholly failed to prove their partial dependency upon their son for support.

In *Smith v. Sash & Door Co.*, 96 Kan. 816, 153 Pac. 533, cited by appellee, there was a positive showing of a substantial contribution by the deceased towards his parents' support. In *Fennimore v. Coal Co.*, 100 Kan. 372, 164 Pac. 265, no question was raised in this court touching the sufficiency of the evidence to prove that the deceased had in fact contributed something tangible and substantial towards his parents' support.

A similar case was *Connors v. Public Serv. Elec. Co.*, 89 N. J. Law, 99, where the son gave all his wages to his mother, which wages were more than the value of his board and lodging; consequently that son did in fact contribute something substantial to the support of his parents. Here the difficulty is that the parents themselves with commendable candor admit that they do not know whether their son contributed anything to their support or not. Thus, the proof to sustain the finding and judgment fails, and the judgment must be reversed and the cause remanded with instructions to enter judgment for defendant. It is so ordered.