No. 22,634.

IRA S. SLATER and SARAH SLATER, *Appellees*, v. THE ISMERT-HINCKE MILLING COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

COMPENSATION ACT—*Death of Minor Son—Compensation Recoverable by Dependent Parents.* In an action under the workmen's compensation law by the parents of a minor son to recover compensation for his death, it was shown that his earnings, which averaged $17.45 per week, were turned over in full to his parents, and that the parents were partially dependent upon such earnings; that he paid no board, but that the expense to his parents for his support was $5.00 per week. *Held,* that in ascertaining the average yearly earnings of the minor, and in fixing the degree of dependency of the parents, the employer is not entitled to a credit or deduction for the expense of the minor's board and support.

Appeal from Shawnee district court, division No. 2; GEORGE H. WHITCOMB, judge. Opinion filed May 8, 1920. Affirmed.

*Adrian F. Sherman,* and *Thad B. Landon,* both of Kansas City, Mo., for the appellant.

*A. E. Crane,* of Topeka, for the appellees.

The opinion of the court was delivered by

PORTER, J.: The Ismert-Hincke Milling Company is a corporation operating a flour mill in the city of Topeka. It is under the provisions of the compensation law. On the 17th of October, 1918, Almon Slater, a boy 16 years of age, was in the employ of the milling company and was killed in an accident while in the course of his employment. His father and mother brought this action to recover under the workmen's compensation act for his death.

The court made findings of fact which show that the boy had been in the employ of the Ismert-Hincke Milling Company less than two months at the time of his death. He was receiving wages at the rate of $17.45 per week, which was the average weekly wage paid to workmen in the same kind of employment. His father, Ira S. Slater, who for more than a year had been in the employ of the milling company, was receiving exactly the same wages. Each week during the time of his employment, the boy turned over all his wages to his father, which, together with the wages received by his father, was used for the support and maintenance of plaintiff's family, which consists of the father, mother, and six children ranging in age from two to fourteen years. The deceased lived at home with his parents and received his board and keep the same as the other children, no charge being made therefor. His father gave him small amounts of spending money from time to time. The court finds that the fair value of his board and maintenance, including such spending money, amounted to about $5.00 a week, and that the plaintiffs were dependent upon the earnings of the son to the amount and extent of $17.45 per week and were dependent to the extent of all of his earnings. As a conclusion of law from the foregoing facts, the court held that plaintiffs were entitled to recover under the compensation law the sum of $2,722.20, and judgment was rendered for that amount.

The Ismert-Hincke Milling Company appeals from the decision, and the sole contention is that it should be given credit

for the $780 which would be the amount of the cost of the board and keep of the plaintiff's son had he lived for the period of the three years for which compensation is fixed. The plaintiffs insist that the son was under no obligation to pay and was not paying board at the time of his death, and therefore that the expenses should not be held as reducing the amount of his earnings, or as affecting the extent of plaintiffs' dependency. Under the provisions of section 5905 of the General Statutes of 1915, as amended by Laws of 1917, chapter 226, section 3, where death results from injury and the workman leaves dependents wholly dependent upon his earnings, the amount of compensation is fixed at a sum equal to three times his average yearly earnings, but not to exceed $3,800 and not less than $1,400. Where he leaves persons in part dependent upon his earnings, the compensation is fixed at "such proportion of the amount payable under the provisions" of the preceding clause "as may be agreed upon or determined to be proportionate to the degree of dependency." The proportion of the dependency was not agreed upon in this case and was not expressly found by the trial court, further than the finding that the parents needed all of the son's earnings.

The question is not free from difficulty. There is, however, no provision in the statute that in case of the death of a workman the cost and expense incurred in his board and support during his lifetime shall be taken into consideration for any purpose. It is conceded that the minor in this case was not paying board. His parents were obliged to support him, and were entitled to all his earnings. It is argued with much force, too, that there is no more reason for deducting the living expenses of a minor than there would be to make such a deduction from the earnings of the father in case of his death. There being no express provision in the statute, it must be held that in ascertaining the average yearly earnings of the minor, and in fixing the degree of dependency of the parents, the employer is not entitled to a credit or deduction for the expense of the minor's board and support.

The judgment is affirmed.

DAWSON, J. (dissenting): Monetary compensation for the injury or death of a workman is a cold-blooded proposition,

but it is the only practical reparation that can be given in this imperfect world (*Truman v. Railroad Co.*, 98 Kan. 761, 766, 161 Pac. 587), and this heartless reparatory yardstick is to be used as an unsentimental matter of mathematical calculation. Whatever part of the boy's wages was devoted to feed, clothe and shelter himself was obviously not used to support his parents. It is that portion of his wages which was devoted to his parents' support, not to his own support as well as theirs, nor to the support of all the family as well as his parents, that is the basis for determining the amount of compensation to be assessed against the defendants. (*McGarvie v. Coal Co.*, 103 Kan. 586, 175 Pac. 375.) I therefore dissent.