No. 34,602

ANNA SPURGIN, *Appellee*, v. H. C. SPURGIN and HARDWARE MUTUAL CASUALTY COMPANY, *Appellants*.

(103 P. 2d 889)

Opinion filed July 6, 1940.

J. A. McDermott, Chandler F. Jarvis and J. M. McDermott, all of Winfield, for the appellants.

W. L. Cunningham, D. Arthur Walker and William E. Cunningham, all of Arkansas City, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action for workmen's compensation. The commissioner of workmen's compensation made an award of compensation to the claimant. On appeal, this was approved by the district court. The respondent appeals.

At the outset, it should be noted that the claimant is Anna Spurgin and the respondents are her husband, H. C. Spurgin, who is owner of the Spurgin Service Parts Company at Arkansas City, and the Hardware Mutual Casualty Company, which carries the compensation insurance for the Spurgin Service Parts Company. There is no dispute about many of the essential facts. It is undisputed that on January 23, 1938, Leon Spurgin was employed by the Spurgin Service Parts Company; that he was working under and subject to the provisions of the workmen's compensation act; that his average weekly wage was ten dollars a week; that he was killed as the result of an accident arising out of and in the course of his employment and that he was eighteen years old and was living at home.

The only question of fact upon which there is any dispute is as to whether or not his mother, Anna Spurgin, the claimant, was dependent upon him.

The pertinent provisions of the statute are as follows:

"(j) 'Dependents' means such members of the workman's family as were wholly or in part dependent upon the workman at the time of the accident. 'Members of a family,' for the purpose of this act, means . . . parents . . ." (G. S. 1935, 44-508.)

The above definition includes the word to be defined, so we must look to the entire act and to general principles for a definition that will apply to each particular case.

"(a) If a workman leaves any dependents wholly dependent upon his earnings, a sum equal to three times his average yearly earnings, . . . (b) If a workman does not leave any such dependents, but leaves dependents in part dependent on his earnings, such percentage of the sum provided in paragraph 2 (a) of this section as the average annual contributions which the deceased made to the support of such dependents during the two years preceding the injury bears to his average annual earnings during such two years." (G. S. 1935, 44-510, 2 [a], [b].)

Applying the above statutes, the court heard evidence as to the amount of contribution the deceased made to the support of his mother, and found that he made a contribution of five dollars

weekly or $260 annually to her support; that she was partly dependent on the deceased and entitled to compensation in the sum of $780. There was no dispute about the funeral expenses of $150, and this was paid. An award was made in the amount of $780.

The respondent appealed from this award on the ground that the evidence did not show that the claimant was dependent on the deceased workman, and that if the record did show that she was partially dependent upon the workman there was not sufficient evidence as to how much he contributed to her support to enable the court to intelligently apply the rule set out in the above statute.

At the outset, we are confronted with the rule laid down by this court so many times that in questions involving workmen's compensation our right of review is limited to questions of law. (See *Shay v. Hill,* 133 Kan. 157, 299 Pac. 263, and *Leamos v. Wilson & Co.,* 136 Kan. 613, 16 P. 2d 490.)

On hearing of this case before the commissioner of workmen's compensation all the parties agreed that the pay of the deceased workman was ten dollars per week. There was no dispute about that. Neither was there any dispute about whether deceased was employed by his father.

On the question of how much deceased contributed to the support of claimant she testified as follows:

"Q. Had he been making any contributions to you at any time during the last couple of years before his death? A. Yes, he had.

"Q. How much contribution had he made to you? A. Well, I never kept an exact account of it, but I imagine that it was at least half of his wages."

She testified further that she needed the contribution for doctor bills, household bills and whatever else might be necessary; that deceased had lived as a member of the household all his life; that she did not know what it would have cost him to have secured a room and board for himself had he not lived at home; that it would have been over a dollar a day anyway; that she got his meals, did his washing, mended his clothes, and bought him a suit at Christmas time; that she thought he contributed at least half of his wages; that she received money and support from her husband; that he usually provided groceries and paid the rent, electric light, water and utility bills for the home and paid for her clothes and doctor bills.

A sister testified that her brother had made contributions to her mother of five dollars a week and her mother had used this money

for her support and maintenance; that at the time of his death there were her father and mother, two brothers and herself in the household.

A brother testified that deceased made contributions to the support and maintenance of his mother, but did not know just how much the contributions were.

When he was called as a witness for the respondent the father of deceased testified that he employed deceased and paid him ten dollars a week; that he paid most of the household bills except what "the kids helped her pay;" that deceased was supposed to give his mother five dollars a week if he could stand that much; that she used the money mostly for doctor bills; that he actually paid the grocery bill, house rent, lights, water, gas and cleaning; that deceased did not pay any board and room; that he paid all the bills of deceased and he could use all the ten dollars a week for whatever he wanted; that his wife got to depend upon the contribution. He also testified, in part, as follows:

"Mrs. Spurgin got to depend upon the contribution and

"Q. And it did help in the support? A. Yes. I wouldn't have given him ten dollars a week if he hadn't been giving her some of it."

There was testimony from all the witnesses that on account of sickness claimant required a great deal of medical attention and incurred an unusually large expense therefor.

Upon the above testimony the commissioner found that deceased made a payment of five dollars a week to his mother for her support. We can only disturb such a finding if there was not substantial evidence in the record to support it. (See *Shay v. Hill* and *Leamos v. Wilson & Co.*, supra.) A statement of the evidence on this point is a refutation of the argument made by respondent that this finding is not sustained by substantial evidence.

The burden of the argument of respondent on this point is not so much that deceased did not pay his mother five dollars a week as that the cost of the room and board furnished deceased by his parents amounted to more than five dollars a week, and before the commissioner could make a finding that the claimant was partially dependent on deceased the amount of a reasonable charge for board and room should be deducted from the amount paid claimant by deceased. In our consideration of this question it is not seriously contended but what the reasonable cost of the board and room furnished deceased was at least five dollars a week.

It is the duty of the commissioner and the trial court to find the average yearly earnings of the deceased, and how much he contributed to the support of the claimant, and to award compensation in the proportion that the amount contributed bears to the earnings of the deceased.

Before this formula may be applied, however, there must first be a finding that the claimant was actually dependent, in part at least, upon the earnings of the deceased.

*Slater v. Milling Co.*, 106 Kan. 772, 189 Pac. 908, was a case where the parents of a minor son were claiming compensation for his death. The findings of the trial court were to the effect that the wages of the deceased were $17.45 a week and that he turned all this over to his father and this, together with his father's wages, was used for the support of his family. The court also found that the deceased lived at home and the fair value of his board and maintenance amounted to $5 a week. It will be noted that this deceased contributed $17.45 a week and that the cost of his board and room was $5. This left $12.45 a week which deceased contributed to his family after the cost of the board and room was deducted. The case turned on whether the $5 a week should be deducted from the amount of the contributions when determining the amount of compensation to be awarded. The question of whether the claimant was partially dependent on deceased as a matter of fact does not appear to have been raised. This court treated the matter as though there was no doubt as to the partial dependency. The fact is, as has been noted, that after the cost of the board and room was deducted from the amount contributed each week by deceased still there was a balance of $12.45 to be used by the father and mother. This opinion has been treated somewhat at length here because claimant cites and relies on it as authority for the rule that in determining whether a claimant is dependent on a minor son the cost of the board and room should not be deducted from the amount of the contributions. It is not authority for such a rule. It is only authority for a rule that in such a case the cost of the board and room furnished should not be deducted when applying the formula provided in the statute. The question of whether the claimant was dependent on deceased in any degree whatever must first be established before any formula may be applied.

This court followed *Slater v. Oil Co.*, supra, in principle in *Golden v. Wilson & Co.*, 129 Kan. 100, 281 Pac. 860. That was a case

where a wife claimed compensation on account of the death of her husband. There, however, the question with which we are concerned here was not treated. There was no question but what the wife was dependent on her deceased husband in some degree. She had been contributing all her earnings of $10 a week and he had been contributing all his earnings of $20 a week. This made a total of $30 a week which the two had to live on. This court held that the degree of dependency of the wife on her husband was sixty-six and two-thirds percent because he contributed two-thirds of the total family fund. *Slater v. Milling Co.,* 106 Kan. 772, 189 Pac. 908, was cited in the opinion because the trial court had evidently held that the amount of the husband's contribution, which had to be taken to support him, should have been deducted before calculating the degree of dependency. This court held that such need not be done. There was no question raised, however, as to whether the wife was actually partially dependent and it is clear that there was some contribution to the support of the wife even had the deductions been made.

In *McGarvie v. Coal Co.,* 103 Kan. 586, 175 Pac. 375, the parents of a deceased coal miner were claiming compensation for his death on the ground that they were partially dependent upon him. The trial court found they were dependent to a degree of seventeen-twenty-seconds of his earnings. It appears that the deceased had been living at home. The amount he contributed was well established, but there was no evidence as to what this amounted to after the cost of his board and room was deducted. This court noted this fact, and said:

"The proof does not show any contribution to his parent's support. The father and mother both frankly admitted they did not know whether the mother's receipts of money from the son ever exceeded a fair estimate for his board and lodging or not. In other words, the plaintiffs wholly failed to prove their partial dependency upon their son for support." (p. 588.)

It should be noted that this court was speaking of proof of dependency there, the very question with which we are concerned. It can hardly be said that the opinion in *Slater v. Milling Co.,* supra, overruled this opinion, since the precise question dealt with in each case was different.

In *Young v. Shellabarger Mill and Elevator Co.,* 123 Kan. 628, 256 Pac. 992, the parents and sister of a deceased workman were claiming compensation for his death on the ground of partial de-

pendency. There was evidence as to contributions he had made in cash and as to work he had done on a farm where the family lived. Among other things the arbitrator found that the son had been paying $9 a week board, of which $4 was profit. The arbitrator had also allowed compensation on the basis of work the deceased had done around the home place. This court disallowed the latter item. On the question, in which we are interested, this court said:

"We are of opinion that while the mother was partially dependent upon deceased, the $4 per week profit to her from the deceased's room and board furnished the only basis from which compensation could be allowed to her." (p. 630.)

It might seem at first glance that these cases are in conflict, but a careful examination of them has convinced us that they are distinguishable.

Claimant argues that there is a distinction between a case where the deceased workman was a minor and lived at home and where the deceased workman was an adult and lived at home. She argues that since there is the duty on parents to support a minor whether he makes any contribution or not, the reasonable cost of the board and room furnished the minor should not be deducted from the amount contributed when deciding whether the claimant was dependent. We are not impressed with this argument. It is true that parents are obligated to provide for their minor children. They are entitled, on the other hand, to their services. In this case a son eighteen years old worked for his father. He received $10 a week upon the condition that he would turn over half of it to his mother to apply on family expenses. What the arrangement really amounted to was that the father, whose duty it was to support the minor and who was entitled to the minor's services, permitted him to keep $5 a week for his own use. As far as the son is concerned it would have amounted to the same thing if he had paid the son $20 a week upon condition that he turn over $15 to his mother. Partial dependency was found by the trial court solely upon the theory that the cost of providing the minor son with the necessities of life should be disregarded in considering whether such a dependency existed. Such a view ignores realities and gives an artificial meaning to the word "dependency."

In *Insurance Co. v. Industrial Acc. Com.*, 186 Cal. 517, 199 Pac. 796, a mother was claiming compensation for the death of her minor son who had been living at home. The commission had

found the mother to be partially dependent on deceased and had made an award. The statute provided that when an injury caused the death of a workman and he left one or more persons partially dependent on him these dependents should be allowed "a death benefit which shall amount to three times the annual amount devoted by the deceased to the support of the person or persons so partially dependent." The commission did not make any deduction for the expense of the clothing, board and lodging of the deceased. The court nullified this award, and, in speaking of this question, said:

"Its theory was that the language of the act authorizes an allowance in such cases not only for the amount devoted to the support of the person who is partially dependent upon the minor child, but also for the amount which such minor child contributes to the dependent person to be applied to his own support. The argument in support of this theory appears to be that the mother is primarily chargeable with the support of her minor children and that a contribution which one of those minor children makes to the support of himself and the mother is, in the contemplation of the law, money devoted to the support of the mother, as the statute expresses it. We can see no reason for such a construction of the statute. The language is plain and it limits the measure of the amount of the award 'to the annual amount devoted by the deceased to the support of the person or persons so partially dependent.' Money which goes to the support of the deceased himself is, of course, not devoted to the support of any other person. The award is not made to the mother because of the fact that she is primarily responsible for the support of the minor children." (p. 518.)

To the same effect is the holding of the court in *Power Co. v. Industrial Acc. Com.*, 191 Cal. 724, 218 Pac. 1018. In that case the deceased workman had been contributing all his wages to the support of his family. The Industrial Commission found that the entire family other than the grandfather and one sister were partially dependent on him. On our question the court said:

"It is the rule in this state, contrary to that which prevails in some other jurisdictions, that, in arriving at the annual amount devoted to the support of dependents, the sum of the general family expenses paid by the decedent must be diminished by deducting the fair proportion thereof that went to the support of the decedent, and of others in the family who were not dependent upon him. Everything must be excluded therefrom except the amount of his contributions that was devoted to the support of the dependents. (*Federal Mutual L. Ins. Co. v. Industrial Acc. Com.*, supra.)" (p. 738.)

These authorities set out a logical and sound test for determining when a claimant is actually dependent.

We hold that since the record is clear that deceased contributed

$5 a week to the support of his mother and a reasonable charge for his board and room would be $5 a week, there was no evidence that claimant was dependent on him in any amount whatever.

The judgment of the trial court is reversed with directions to render judgment for the defendant.

WEDELL, J., concurs in the result.

SMITH, J. (dissenting): I find myself unable to agree with the majority. The question at issue in this case cannot be thoroughly understood unless some attention is paid to the legislative history of the matter. The first workmen's compensation act was chapter 218 of the Laws of 1911. That act introduced the idea of workmen's compensation into our state. The entire subject was then in more of an experimental stage than it is now. The payment of amount of compensation to dependents was dealt with in section 11 of that act. Subparagraph 2 of that section provided as follows:

"If the workman does not leave any such dependents, but leaves any dependents in part dependent upon his earnings, such proportion of the amount payable under the foregoing provisions of this section, as may be agreed upon or determined to be proportionate to the injury to the said dependents;"

It will be noted that the amount to be paid where the claimant was only partially dependent on the deceased depended on the proportion the injury to the dependents bore to the wages of deceased. That language was construed to mean that it was necessary that the court ascertain what proportion of the support of the claimant was derived from the deceased and the claimant then received that proportion of the amount provided for in the preceding part of the section; that is, if a claimant was getting one-half of her support from the deceased she would receive one-half of the amount provided. This section was amended in 1913—at the next session. The language that has been referred to was not changed, but the act was amended so that marriage of the dependent would terminate any compensation the dependent was receiving. This does not have any particular bearing on our question, but is pointed out here to show that this particular subject has been under almost constant scrutiny of the legislature since the first compensation act was enacted. This act was next amended by chapter 226 of the Laws of 1917. Section 3 of that act contained the following language:

"If a workman does not leave any such dependents, but leaves dependents in part dependent on his earnings, such proportion of the amount payable

under the provisions of paragraph 2(a) of this section as may be agreed upon or determined to be proportionate to the degree of dependency of the said dependents."

It will be noted that this act made the amount that the partially dependent should receive dependent on the degree of dependency, the same general theory that was in the original act of 1911. The section was again amended in 1927. There the following language was used:

"If a workman does not leave any such dependents, but leaves dependents in part dependent on his earnings, such percentage of the sum provided in paragraph 2(a) of this section as the average annual contributions which the deceased made to the support of such dependents during the two years preceding the injury bears to his average annual earnings during such two years." (Laws 1927, ch. 232, § 10.)

It will be noted that under this act the amount to be paid a partially dependent depends not upon the degree of dependency or the injury to dependent or claimant, but upon the proportion the amount deceased had been contributing bears to his average annual earnings. It seems to me and will be borne out by cases cited hereinafter that the sections referred to enacted in 1911 and 1917 and the sections enacted in 1927 provided two radically opposed ideas as to the question of dependency on a deceased workman. These sections were more than mere formulae for determining the amount to be awarded. The legislature must have meant something by amending this section. It seems it could have intended nothing else than that those charged with the administration of the workmen's compensation act should not inquire into the degree to which the claimant was dependent upon a deceased workman, but rather should confine its inquiry to the amount of contributions made by the deceased workman to his dependents, no matter what the financial situation of the dependent. The language I have quoted from the 1927 act is the language that is now in G. S. 1935, 44-510. The section was amended in chapter 217 of the Laws of 1931, but not as to any matter with which we are concerned at this time.

The unsettled state of our decisions is due in part to the weight given the opinion of this court in *McGarvie v. Coal Co.*, 103 Kan. 586, 175 Pac. 375. In that case a father and mother were claiming compensation for the death of a son who had lived at home. The case turned on whether the parents were dependent on the son. On that question this court said:

"The proof does not show any contribution to his parents' support. The

father and mother, both, frankly admitted they did not know whether the mother's receipts of money from the son ever exceeded a fair estimate for his board and lodging or not. In other words, the plaintiffs wholly failed to prove their partial dependency upon their son for support." (p. 588.)

The question of the age of the son was not discussed in the opinion, but an examination of the abstract discloses that he was thirty-four years old.

Two Kansas cases are distinguished in the opinion. They are *Smith v. Sash & Door Co.*, 96 Kan. 816, 153 Pac. 533, and *Fennimore v. Coal Co.*, 100 Kan. 372, 164 Pac. 265. It just happens that in both these cases the deceased workmen were minors. The question with which we are dealing was not discussed, however. In both cases compensation was awarded.

As to the Smith case, the opinion in the McGarvie case stated that it was not in point because there was a positive showing of a substantial contribution by the deceased toward his parents' support. At that time the statute provided that the amount to be awarded a partial dependent depended on the injury to the dependent. This court said:

"It amounts to this: By using some of the boy's wages the mother could be provided with necessary medical attention, otherwise she could not be thus provided and must suffer for want thereof, unless we assume, without basis, that such attention could be had without remuneration. To this extent, therefore, it seems quite clear that there was a condition of dependence." (p. 819.)

The above language applies with peculiar force to this case in view of the testimony in the record that this claimant used the money furnished by deceased to pay for medical attention. At any rate, the case was not in point for or against the McGarvie case.

The statute in effect at the time the Fennimore case was decided provided that the amount to be awarded a partial dependent depended on the injury to the dependent.

The only authority cited in the McGarvie case was *Connors v. Public Service Elec. Co.*, 89 N. J. L. 99. An examination of this case discloses that the deceased workman was an adult.

The first time this court ever considered or passed on the question we are now considering was in *Slater v. Milling Co.*, 106 Kan. 772, 189 Pac. 708. It was a case where the parents of a minor son were claiming compensation for his death. The findings of the trial court were to the effect that the wages of the deceased were $17.45 a week; that he turned all this over to his father, which, together with his

father's wages, was all used for the support of his family. The trial court also found that the deceased lived at home and that the fair value of his board and maintenance was $5 a week. Compensation was awarded. The respondent appealed and argued only the point that it should have been allowed a credit of $5 a week for the keep of the son had he lived for three years for which compensation was awarded. The statute at the time this case was decided (1920) was as heretofore quoted from R. S. 1923. Notwithstanding that, this court held that the argument was not good, and said:

"The question is not free from difficulty. There is, however, no provision in the statute that in case of the death of a workman the cost and expense incurred in his board and support during his lifetime shall be taken into consideration for any purpose. It is conceded that the minor in this case was not paying board. His parents were obliged to support him, and were entitled to all his earnings. It is argued with much force, too, that there is no more reason for deducting the living expenses of a minor than there would be to make such a deduction from the earnings of the father in case of his death. There being no express provision in the statute, it must be held that in ascertaining the average yearly earnings of the minor, and in fixing the degree of dependency of the parents, the employer is not entitled to a credit or deduction for the expense of the minor's board and support." (p. 774.)

The legal principle announced above was followed in *Golden v. Wilson & Co.*, 129 Kan. 100, 281 Pac. 860. The McGarvie case has been noted at length because outside of a case that did not involve the compensation act it is the sole authority for a dissenting opinion in the Slater case.

Some mention is made of *Young v. Shellabarger Mill & Elevator Co.*, 123 Kan. 628, 256 Pac. 992. In that case the deceased workman was twenty-four years old. It will thus be seen that the only time this court has ever passed on the precise question raised in this case is in the Slater case.

I am not impressed with the argument that there should be a different view taken of the question of deducting the cost of a minor's board and room when deciding whether the parent was dependent on the minor and when applying the formula for compensation. In the Slater case this court said:

"There is, however, no provision in the statute that in case of the death of a workman the cost and expense incurred in his board and support during his lifetime shall be taken into consideration *for any purpose*." (Italics ours.) (p. 774.)

I agree with this statement. Moreover, authorities from other

states have convinced me that in considering statutes such as ours, courts have generally taken the view that there is a distinction between cases where the deceased workman was a minor and those where he was an adult, and that furthermore, the cost of board and room of a minor should not be deducted from his contributions when considering the question of whether parents were dependent.

*In re Peters,* 65 Ind. App. 174, 116 N. E. 848, was a case where the father of a minor son was asking compensation for his accidental death. The pertinent statute provided as follows:

". . . 'be in the same proportion to the weekly compensation for persons wholly dependent as the amount contributed by the deceased employee to such partial dependent bears to his annual earnings at the time of the injury.'" (p. 179.)

Note the similarity between these provisions and the provision of our act. The court said:

"It is contended that a proper inquiry to be made, where a parent makes application for compensation by reason of being deprived of contributions from the earnings of a minor son, is whether such son was a financial asset to such parent; that the mere fact that the son's earnings entered into the common family fund is not material, unless those earnings exceeded the cost of his maintenance. . . . This identical question was involved in the case of *Mahoney v. Gamble-Desmond Co.* (1916), 90 Conn. 255, 258, 96 Atl. 1025, 1026, L. R. A. 1916E 110, decided by the supreme court of Connecticut, in which the court said: 'We are not, therefore, required in this case to strike a balance between the boy's earnings and the cost of his maintenance, with a view to ascertaining whether his death was a financial injury to the father. We are only to determine whether, at the time of the injury, the father was dependent upon the boy's earnings within the meaning of the act. As to this we think there can be no doubt. It was the father's duty to support the boy, and it was his right to receive the boy's wages. The boy did not, as the respondent argues, give to his father his pay envelope in exchange for maintenance. Nor did the father maintain the boy in exchange for his wages. The boy's wages belonged to the father. Whatever earnings the boy turned over to his father were used by the father in discharging his legal obligation to support his family; and as the father had no other income at the time of the injury, he was plainly dependent on the boy's earnings for his means of living.'" (pp. 179, 180.)

Two Massachusetts cases are persuasive on this question. They are *Murphy's Case,* 218 Mass. 278, 105 N. E. 635, and *Gove's Case,* 223 Mass. 187, 111 N. E. 702. In *Murphy's Case* the wages of the deceased son were $5.67 a week. He lived at home and his board and room cost $2.50 a week. His employer argued that the cost of his board and room should have been deducted when calculating

how much the award should be. The act provided in substance that:

" 'If the employee leaves dependents only partly dependent upon his earnings for support, there shall be paid such dependents a weekly compensation equal to the same proportion of the weekly payments for the benefit of persons wholly dependent as the amount contributed by the employee to such partial dependents bears to the annual earnings of the deceased at the time of his injury.' "  (p. 280.)

The court also referred to the English case of *Tamworth Colliery Co., Ltd., v. Hall*, (1911) A. C. 665. That case will be discussed presently.

In *Gove's Case* the minor son, who was killed, contributed $15.38 a week to the support of his mother. He lived at home, and the cost of his board and room was $5 a week. Part II, § 6, of the Statutes of Mass. for 1911, c. 751, provided as follows:

" 'If the employee leaves dependents only partly dependent upon his earnings for support at the time of his injury, the association shall pay such dependents a weekly compensation equal to the same proportion of the weekly payments for the benefit of persons wholly dependent as the amount contributed by the employee to such partial dependents bears to the annual earnings of the deceased at the time of his injury.' "  (p. 191.)

The employer argued that the cost of the board furnished the deceased should have been deducted. The court said:

"The board were right in not deducting $5 a week, the value of the board which the dependent furnished to the deceased." (p. 190.)

The case is of interest to us here because of what was said with reference to *Tamworth Colliery Co., Ltd., v. Hall,* supra. The employer in the *Gove's Case* insisted that the rule announced in the Tamworth case was an authority for holding that the cost of the board and room of the minor should be deducted from the contributions made by him in calculating compensation to be awarded. The court in *Gove's Case* pointed out that the English statute, that is, 6 Edw. 7, ch. 58, Sched. I, par. 1 (a) (ii), provided, in part, with reference to compensation to be paid partial dependents:

" 'Such sum' as 'may be determined  .  .  .  to be reasonable and proportionate to the injury of the said dependents.' "  (p. 192.)

It held that such language provided the same measure for compensation as was used in interpreting Lord Campbell's act, the wrongful death statute, that is, the damage caused the plaintiff by the death of deceased was the measure. The court then pointed out

the difference between the statute of England and the statute of Massachusetts, which is in the main the same difference that there is between our statute of 1911 and the present act, and stated that there could be no doubt but that the legislature intended that the rule in force in England when the Tamworth case was decided should not be followed, and the measure should not be the damage or injury to the defendant, but the amount of his contribution to the deceased. This case has been dealt with at length here because it explains the statement in *In re Peters,* supra, in substance, as follows: "The rule contended for by the employer there found support in certain cases under the English compensation act where it is provided that the compensation shall be proportionate to the injury to the dependents, but it has not met with approval in this country under acts similar to ours."

In *Draus v. International Silver Co.,* 105 Conn. 415, 135 Atl. 437, a mother was claiming compensation for the accidental death of her son. On the question we are considering the court held:

"In the present case, a minor son whose death was caused by a compensable injury, turned his entire wages of $20 per week over to his mother, who, because of the abandonment of the family by the father, had no other means of support except the earnings of another minor son and payments of $10 per week made by two adult children for board and room. The decedent had received from his mother his board and room, valued at $10 per week and spending money of $1.50 a week. The compensation commissioner and the trial court ruled that the sum actually contributed by the decedent to his mother was only the net benefit which she derived from his earnings, or $8.50 per week, and that, under section 4 of chapter 306 of the public acts of 1921, the award to her must be restricted to that amount. Held that this was error; that since the item of $10 for the decedent's room and board and the reasonable allowance to him of $1.50 for spending money were merely part of the expense of discharging the mother's duty of maintaining him, his contribution to her support was the total amount of his payments to her; and that, therefore, she was entitled to an award of one-half his average weekly earnings, or $10 per week." (p. 416.)

In *Correia's Case,* 275 Mass. 340, 175 N. E. 731, a mother was claiming compensation on account of the accidental death of her son. It appeared that deceased was earning $19.98 a week at the time of his injury; that he gave this to his mother; that he lived with her and the other children and she gave him one and two dollars a week spending money; that she bought and paid for and made his clothing. On the question we are considering the court said:

"The claimant as the only living parent of the employee, an unemancipated minor, had a right to all his earnings (*Tornroos v. R. H. White Co.,* 220 Mass. 336, 341-342) and, as it is not controverted that she was partially dependent upon him, earnings turned over to her by him in accordance with this right would be 'contributed by the employee' to her within the meaning of the act. (See § 31, as amended. Murphy's Case, 218 Mass. 278. Dembinski's Case, 231 Mass. 261. Cammick's Case, 259 Mass. 209.) As the claimant had the corresponding duty to furnish reasonable support to the employee, amounts expended by her for such support were expended for her own purposes and were not required to be deducted in the determination of the amount of his contributions to her. . . . It cannot be ruled as matter of law that an allowance to a minor child for 'spending money' which is reasonable in the circumstances of the case is not an expenditure for the parent's purposes, though doubtless an allowance so large as to be disproportionate to the parent resources would have a strong tendency to show that the parent was acting 'as banker for the child by keeping the wages of the latter for his use' rather than exercising 'the common-law right of receiving and using as his own the earnings of his minor child.' " (pp. 342, 343.)

In *Heughan's Case,* 129 Me. 1, 149 Atl. 151, the parents were claiming compensation for the accidental death of their minor son. The pertinent statute provided as follows:

" 'If the employee leaves dependents only partly dependent upon his earnings for support at the time of his injury, the employer shall pay such dependents for a period of three hundred weeks from the date of injury, a weekly compensation equal to the same proportion of the weekly payments herein provided for the benefit of persons wholly dependent as the amount contributed annually by the employee to such partial dependents bears to the annual earnings of the deceased at the time of the injury.' " (p. 3.)

On our question the court said:

"We agree with the reasoning and words of Loring, J., in Gove's Case, *supra,* where he says, 'Where the claimant is wholly dependent upon the deceased it is of no consequence whether he contributed all his wages or only a fraction of them to the dependent, and it is of no consequence whether the deceased did or did not receive any benefit from the dependent. The sum to be paid is measured by the wages of the deceased, not by the injury done to the dependent. Where the dependents were only partly dependent upon the earnings of the deceased the amount to be paid is "a weekly compensation equal to the same proportion of the weekly payments for the benefit of persons wholly dependent as the amount contributed by the employee to such partial dependents bears to the annual earnings of the deceased at the time of his injury." (The same language essentially as in the Maine act.) The amount to be paid in case the dependent was partly dependent only is to be a portion of that paid in case of those wholly dependent and the amount is to be determined on the same basis; that is to say, it is to be measured not by the injury done the dependent but by that proportion of the average weekly wages of the

deceased which the amount of the wages contributed by him to the dependents bore to the amount of his annual earnings without regard to the benefits, if any, received by the deceased from the dependents.' We therefore hold in this case, that in determining the amount 'contributed to dependents,' no deduction of the cost of the deceased employee's board, while living at his parents' and paying no board, should be made." (p. 4.)

In *Clingan v. Ice & Cold Storage Co.*, 223 Mo. App. 1064, 25 S. W. 2d 1084, the court held:

"There is no provision in workmen's compensation act of 1927 for deducting the cost of boarding and supporting deceased minor employee, and commission in fixing the amount to be awarded parents as partial dependents was not required to deduct for such boarding and keeping of minor child." (Syl. ¶ 2.)

The court said:

"Suffice it to say that our workmen's compensation act makes no provision for such a reduction. It merely provides a basis of computation by which to determine the amount to be paid, and since no provision is made for any reduction on account of being relieved of the further support of the deceased minor, it is apparent to us that none was intended." (p. 1068.)

To the same effect is the holding in *Maryland Casualty Co. v. Bess*, 33 Ga. App. 798, 127 S. E. 828; also *Lemmler et al. v. Fabacher*, 19 La. App. 144, 139 So. 683; also *Chauvin v. American Mut. Liability Ins. Co.*, 17 La. App. 187, 134 So. 450.

The above authorities have followed the rule announced by this court in *Slater v. Milling Co.*, supra. The provisions of the statutes have been comparable and the reasoning analogous. The facts are such as to make them in point in this case.

The case of *Insurance Co. v. Industrial Acc. Com.*, 186 Cal. 517, 199 Pac. 796, appears at first glance to be an authority for the view of the majority. There a father claimed compensation for the death of a son. The court held that the cost of his board and room should be deducted from the amount contributed by the workman. The statute in question provided, with reference to partial dependents, as follows:

"In addition thereto a death benefit which shall amount to three times the annual amount devoted by the deceased to the support of the person or persons so partially dependent." (p. 518.)

The conclusion reached turned on a construction of the words "devoted by the deceased." It was pointed out that the part of the money contributed to a family fund, part of which was used to defray the expenses of the deceased, was not devoted by him to the support of his parents. The court said:

"The purpose of the act is to provide a compensation to the dependent person for the loss such person will sustain because of the death of the decedent, necessarily a loss subsequent to the death and not a loss of anything acquired before death." (p. 519.)

We have just demonstrated in this opinion that the above is not the purpose of compensation acts with a provision such as our act has. Gove's Case, *supra,* was called to the attention of the court and the court pointed out the difference in the statutes. The court pointed out that the commission had relied on the decision in Gove's Case, *supra,* and said:

"The Massachusetts act makes the measure of the compensation dependent upon 'the amount contributed by the employee to such partial dependents.' The Massachusetts court construed this to mean all amounts contributed by the deceased to the dependent, regardless of the purpose to which it was applied, and thereupon it concluded that where the deceased was a minor and the dependent person was his parent with whom the deceased lived, the amount of his contribution going to the support of the deceased himself was not to be a deduction from the total contribution to the dependents. This was a fairly logical conclusion from the language of the Massachusetts act, but it cannot be taken as authority for the conclusion that the California act has the same effect." (p. 519.)

The subject of the workmen's compensation is constantly undergoing study and change to fit the needs and ideas of our people. This change in our statute from 1911 to 1927 is so analogous to the difference between the English statute and our statute that I feel certain the legislature made the change in our statute to escape the consequences that would follow from having the same language used in our act that was used in the English act. This profound conviction has impelled me to write this dissenting opinion even though it was my duty to write the prevailing opinion.

HARVEY, J. (concurring specially): I concur in the order of reversal, but not upon the grounds stated in the syllabus. Briefly stated, my reasons are as follows: The workman was a minor. His father was bound to support him, and was entitled to his services or his wages. Also, the father was bound to support his wife and his other minor children. He employed the son, at $10 per week, with the definite understanding the son would give about half of it to his mother for her use and the needs of the family, the other half obviously to be used by the son for his personal needs. In short, the father, by this payment to his son of $10 per week, was fulfilling in part his financial duty to support his son, his wife, and the

other members of his family. Perhaps he could have performed his full financial duty to support his son, his wife and other members of his family if he had paid the son $25 per week and required him to pay $20 of it to his mother for the support of herself and the family. All that was done here was for the father to pass through the hands of the son $10 per week, to be used for purposes the father was bound to provide if he had paid the son no wages, or much larger wages. The result is, there is no basis in the evidence to compute the amount of any award of compensation. As I view the record, this is about all there is in this lawsuit.