Woodsville Guaranty Savings Bank *v.* B. M. Ricker and

J. W. Blanchard.

October Term, 1911.

Present:   Rowell, C. J., Munson, Watson, Haselton, and Powers, JJ.

Opinion filed January 8, 1912.

*Directed Verdict when Neither Party Desires to go to Jury—Test on Review—Statute of Limitations—Removal of Bar—Acknowledgment—Sufficiency.*

In reviewing the action of the trial court in granting plaintiff's motion for a directed verdict, where defendant did not desire to go to the jury, the only question is whether the evidence was such that it would have supported a verdict for plaintiff.

The mere acknowledgment of an existing debt is not sufficient to remove the bar of the Statute of Limitations, for to do that the acknowledgment must be such, and made in such circumstances, as to indicate, or be consistent with, a willingness to be held liable for the debt.

Where the surety on a promissory note wrote the owner in response to demands for payment, that the bankruptcy case of one of the principals had not been settled, and directing the owner to get all he could from the principals, as the surety would be at home in two weeks, when he

would see the owner, those letters were such an acknowledgment of the debt and admission of liability as to remove the bar of the Statute of Limitations.

ASSUMPSIT on the promissory note hereinafter described. Pleas, the general issue, and that the cause of action did not accrue within six years before the bringing of the suit. Replications, *similiter*, and that the cause of action did accrue within six years. Trial by jury at the December Term, 1910, Caledonia County, *Butler*, J., presiding.

During the progress of the trial, on motion of plaintiff, a discontinuance was entered as to defendant Blanchard, to which no exception was taken. Defendant Ricker testified that he signed the note in question, which is dated August 21, 1901, for $1,000, payable twelve months after date to the order of Woodsville National Bank, and signed by B. F. Ricker, J. W. Blanchard, and defendant B. M. Ricker. It appeared that defendant Ricker had none of the proceeds of the note, and as between the signers was in fact a surety. About December, 1904, or January, 1905, B. F. Ricker failed and went into bankruptcy. On the note appeared five indorsements of interest paid, the first on October 2, 1902, and the last on September 24, 1904, it being the interest to October 1, 1904. There was also an indorsement under date of January 26, 1909, "Reced. $10.25 from trustee in bankruptcy, 1%." And under date of June 3, 1909, there was an indorsement of a payment of $25.63 by the trustee in bankruptcy. Between the two last indorsements is written, "Without recourse to Woodsville National Bank, by H. W. Allen, Cashier." None of the indorsements were in the handwriting of defendant Ricker, and there was no evidence that he ever made or authorized any of those payments, unless it appears by inference from the letters hereinafter referred to that the payments made by the trustee of B. F. Ricker's estate in bankruptcy were so made. In consequence of a letter from defendant Ricker to H. W. Allen, Cashier, in February, 1906, and by the latter shown to plaintiff's attorney, the note was proved by plaintiff against said estate in bankruptcy. That letter was offered in evidence, but excluded.

The writ is dated September 27, 1909. There was evidence

that soon after the note was given it was sold and transferred by the Woodsville National Bank to plaintiff. On March 12, 1908, Jerry Abbott, plaintiff's treasurer, wrote and mailed the following, which was signed by him as such treasurer: "The interest on your note for one thousand dollars to April 1, 1908, will be $226.20, and you are requested to pay the same on or before that date.

To B. F. Ricker: Please present this notice when making payment." On a separate sheet was written, "We must have the interest at least, cannot wait any longer."

The envelope in which the evidence tended to show this letter was enclosed was addressed to defendant Ricker, and he answered it by a letter dated March 16, 1908, signed by him and addressed to said Abbott as "treasurer," the body of which is: "Yours received send me the date of that note when it was given and the dates of the payments that have been made on it. Frank's bankruptcy (case) has not been settled yet you get all you can out of the other parties he and John Blanchard had the money."

Later said Abbott, as such treasurer, again wrote defendant Ricker as to this note, but the letter was lost and plaintiff had no copy; and defendant Ricker answered it by a letter signed by him and addressed to said Abbott, the body of which is:

"Your letter received B. F. Ricker bankruptcy suit is not settled yet I want you to get all you can out of the other two they had the money shall be at home in two weeks and will see you then."

On May 13, 1909, plaintiff's attorney wrote, signed, and mailed to defendant Ricker a letter the body of which is:

"At the request of the Woodsville Bank, I am writing you in relation to a note held by that bank, signed by you together with B. F. Ricker and J. W. Blanchard. The note is given for $1,000, and there has been no interest paid since October 1, 1904, and no payment on the note except a dividend from the bankrupt estate of B. F. Ricker of $10.25 received Jan. 26, 1909. The bank desires this note paid at once. Please give this matter your immediate attention and let me hear from you."

In answer to that letter, defendant Ricker wrote said at-
torney under date of May 15, 1909, as follows:

"Yours received I am sorry to say that I cannot do anything
for the Bank now I have lost my money and have no funds
to pay with they know all about it.  I got a notice from J. C.
Sherburne the Referee in Benjamin F. Ricker in bankruptcy
to meet at Randolph May. 21, and there are $419.45 in hands
to be distributed I suppose the bank got one too."

Upon the evidence above recited, which was not explained
or varied, respecting an acknowledgment  or new promise, plain--
tiff rested its case.  Defendant Ricker then moved for a directed
verdict, which was refused.  Thereupon, defendant Ricker·
not wishing to go to the jury on any issue, and electing to stand
on his motion, on motion of plaintiff a verdict was directed
in its favor for the amount due on the note, and judgment ren-
dered thereon.  Defendant Ricker excepted to the overruling
of his motion for a directed verdict, to the direction of a verdict
for plaintiff, and to the rendition of judgment thereon.  No
question was made as to the amount due on the  note, nor as
to the amount of the verdict.

*Elisha May* for the defendant.

*Smith & Smith*, and *Fred S. Wright* for the plaintiff.

WATSON, J.  The suit having been discontinued as to
Blanchard, the case is here against B. M. Ricker alone, and we
shall refer to him as the defendant.

The defendant not wishing to go to the jury upon any ques-
tion of fact, the sole question before us is,  Did the evidence
show such an acknowledgment of the promissory note in ques-
tion by him that a verdict for the plaintiff could reasonably and
properly be based thereon?

The evidence of this character is all contained in the three
letters written by the defendant under dates of March 16,.
1908, September 17, 1908, and May 15, 1909, respectively.
There can be no doubt that in each of these letters the defendant
acknowledged the note as an existing indebtedness, but this is
not enough.  To prevent the statutory bar, the acknowledg-

ment must be of such a character and made in such circum-
stances as to indicate or be consistent with a willingness to remain
liable.    *Brayton* v. *Rockwell*, 41 Vt. 621; *Prescott* v. *Vershire*,
63 Vt. 517, 22 Atl. 655.    When the letter of March 16  was
written by the defendant the note had yet five months to run
before it would be outlawed as to him.    It was in reply to a
notice sent him by the treasurer of the plaintiff, under date
of March 12, stating the amount of the interest on the note
to April 1, and requesting its payment on or before that date,
and further stating (on a separate sheet) that the bank must
have the interest at least, "cannot wait any longer."    B. F.
Ricker, one of the principals on the note for whom the defendant
was in fact surety, was then in bankruptcy.    In these circum-
stances the defendant, in  that letter to the plaintiff's treasurer,
asks for the date of the note, the dates of the payments thereon,
and then says, "Frank's bankruptcy (case) has not been settled
yet you get all you can out of the other parties he and John
Blanchard had the money."    We think thereby the defendant
impliedly indicated a willingness to remain liable on the note;
that the letter has the force of saying, "I want you to get all
you can out of the other parties (for they had the money), and
I am willing to pay the rest."    The case of *Winchell* v. *Hicks*,
18 N. Y. 558, is very much in point.    There one Bowman had
the money and was the principal for whom the other defendants
were sureties.    Before the statute had run the plaintiff called
upon Hicks for payment of the note, being willing to forego
the payment of the principal if the interest should be paid.
Hicks replied in substance, "that he (plaintiff) must get it out
of Bowman."    This reply of Hicks was held sufficient to bind
him; that it meant in other words, "I am surety only, and though
liable and willing to pay, if the principal fails so to do, I wish
you to request him to pay it, and if he refuses or fails, you can
call on me again."    ·

The letter of September 17, though written after six years
from the maturity of the note had elapsed, contained, in this
respect, in substance the same as the letter of March 16, with
the further statement, "shall be home in two weeks and will
see you then."

We think that these two letters (without considering the

third) were reasonably sufficient to justify the verdict ordered and the judgment rendered.

*Judgment affirmed.*