(No. 20017

MARY NOVAK, Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(THE SKINNER COAL COMPANY, Plaintiff in Error.)

*Opinion filed April 17, 1930.*

OSCAR E. CARLSTROM, Attorney General, JOHN J. SHER-LOCK, and FRANK R. EAGLETON, (C. B. CHAPMAN, of counsel,) for plaintiff in error.

THOMAS A. MURPHY, for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

George Stranz received an accidental injury arising out of and in the course of his employment by the Skinner Coal Company in its mine which caused his death, and upon the application of his mother, Mary Novak, for compensation under the Workmen's Compensation act an arbitrator made an award in her favor of $1650, which the Industrial Commission upon review set aside and thereupon directed the coal company to pay into the special fund provided for by paragraph (e) of section 7 of the Workmen's Compensation act, of which the State Treasurer is custodian, $300, and to the undertaker or person incurring the expenses of burial of the deceased, $150. Mary Novak sued a writ of *certiorari* out of the circuit court of Cook county, which set aside the award of the Industrial Commission and entered the same award as the arbitrator made. Upon petition of the coal company to this court a writ of error was awarded.

The only question for review is the dependency of the mother, and the only evidence heard was her testimony which was taken before the arbitrator. She testified that her son, who was killed in the mine on October 21, 1927, was twenty-two years old and unmarried. His father was dead and she was married to Thomas Novak, with whom she was living. There were four children of the first marriage, of whom Nina, twenty years old, had been living and working in Chicago about four years and was not at home; Harry, nineteen, lived at home; Alice, seventeen, lived in Chicago and had been employed there about a year; Mildred, fifteen, lived at home and was unemployed. Thomas

Novak, a son of the second marriage, six years old, was living at home. Her husband worked for the Sunlight Coal Company as a driver for $7.50 a day, beginning in October, 1927. She received each pay-day from her husband $80 or $84, and from the boys, George and Harry, who started to work in the Skinner mine about a month before George was killed, about $32 each, and there were two pay-days a month. She gave George $5 every two weeks for spending money and clothed him. He lived and had his meals at home with the family in a house of six rooms, which was owned by the defendant in error and her husband in joint tenancy. George was not a boarder and paid no board but lived as one of the family, turning all his wages over to his mother for her use in the support of the family. Before her husband started to work in the mine he was out of work for some time. She had no income but bought on credit, and when he started to work in the mine she owed bills at the store. Prior to going to work for the coal company her husband worked on the railroad for three or four or five months for $3.20 a day and gave the money to her. George also worked on the railroad as a section hand and got his father a job there, and for a while George and Harry and their step-father worked on the railroad together and then all three were laid off. In October, 1927, the month of George's death, the three were employed in the mines and their wages that month amounted to $322.55, which Mrs. Novak received. With that she bought clothes and groceries and paid expenses for lights and other things. She had electric lights and coal and the girl's music and other things and had nothing left after paying expenses. Being cross-examined as to the items of expenditure, she testified that the groceries for the family, including meat, cost $100 a month; light, $2 or $3; the girl's music, $5; coal, $7 to $10 every two weeks; occasional doctor's bill, $3 a charge; milk bill, $6 a month; chicken feed, $6 or $7 every two weeks, and she could not think of

everything else. On re-direct examination she testified that she had to clothe the family, and she paid $150 insurance for the whole family.

Questions of dependency and the extent of it are questions of fact, and the burden is on the claimant of compensation to show by a preponderance of the evidence that at the time of the injury she was dependent upon the earnings of the employee and was wholly or partially sustained by him or relied upon his aid for her means of living according to her position in life and was to a substantial degree supported by him at the time of his death. (*L. M. & O. Motor Co.* v. *Industrial Com.* 335 Ill. 254.) The evidence brings the application fairly within the terms of the law just stated.

Counsel for the plaintiff in error have compared the expense account of the family with the income of the defendant in error's husband, based upon his earnings in October, 1927, and find the income to be from $2080 to $2184 a year and the expenses from $1844 to $1960, and conclude from their calculation that the defendant in error was supported by her husband and was not dependent in any degree upon the assistance of her son for her support. This calculation makes no allowance for the clothing of the family, for the occasional visits of the doctor, for the payment of taxes, and the various miscellaneous and incidental expenses incurred by a family of five persons and included in Mrs. Novak's statement, "I can't think of everything else." Neither does it take into account the fact that, although the husband in October, 1927, was earning $7.50 a day, during the preceding months he had had employment only part of the time and at only $3.20 a day, and that during this time George had contributed to his mother the whole of his earnings of $3.20 a day. She was at least partially dependent on this contribution for her support and relied on the aid of George's earnings for her means of living. Moreover, during this time she bought on credit, and when

her husband and the two boys later obtained more profitable employment she was in debt at the store. This calculation of the plaintiff in error's counsel also ignores the fact that the employment of the defendant in error's husband was in a coal mine—a seasonal occupation, whose working days were not constant throughout the year but were subject to considerable interruption. For this reason the income of neither one of the three for the year could fairly be estimated at twelve times the full rate which they were receiving in October. The mother certainly had been dependent for several months upon the earnings of all three, and she did not become independent of any one of them because her husband was working in October, on the day the deceased was killed, at wages sufficient to support the family. For this reason, in estimating the defendant in error's condition of dependency her husband's income must be discounted considerably, and while it might be sufficient to prevent the family's suffering for the bare necessities of life, it is apparent that the defendant in error was dependent upon the earnings of her two sons, as well as her husband, for a substantial degree of support according to her position in life. The fact that her husband and her two boys received in October, and gave to her, $300 received for their work in the coal mines, did not justify the conclusion that Mrs. Novak's income from their joint receipts was $3600 a year, or that the wages of her husband furnished an adequate support for the family or made her independent of the assistance of her two sons.

The finding of the Industrial Commission that George Stranz left surviving him no person entitled to compensation is manifestly against the weight of the evidence, and the judgment of the circuit court setting aside the order of the commission and entering an award of compensation to the defendant in error is affirmed. *Judgment affirmed.*