MARY ROLNICK. PETITIONER-DEFENDANT, v. INDUS-TRIAL ENGINEERS, RESPONDENT-PROSECUTOR.

Submitted October 2, 1945—Decided December 10, 1945.

Before Justices CASE, BODINE and PERSKIE.

For the petitioner-defendant, *Frank I. Casey.*

For the respondent-prosecutor, *John W. Taylor.*

The opinion of the court was delivered by

CASE, J.  This is on an application for a writ of *certiorari* with a stipulation that if the writ is allowed the court may consider the record and briefs submitted on this application as though the matter had been fully returned and argued on the writ.

Andrew M. Rolnick, thirty years of age, was killed on September 9th, 1941, while in the employ of Industrial Engineers as the result of an accident arising out of and in the course of the employment. His mother, Mary Rolnick, fifty-three years of age, applied to the Workmen's Compensation Bureau for compensation. That tribunal found that the petitioner was partially dependent upon the decedent; that she was employed and received an average compensation of $15 a week from her employment; that the decedent's contribution to her was from $50 to $55 dollars a week and that the petitioner was entitled to compensation for a period of 300 weeks from September 9th, 1941, at the rate of $15 a week in addition to burial allowance, attorney's fees and stenographic

costs. On appeal the Mercer County Court of Common Pleas affirmed, with a reduction in the attorney's allowance. The details by which those tribunals reached the precise weekly figure of the award are not shown. Our calculation leads us to a different result. We conclude that a writ should properly issue, and we proceed, in accordance with the stipulation of counsel, to decide the issue on the record now before us.

The determinative question is the amount of the actual contribution made by the son towards the mother's support. We find the facts as follows: The decedent was a structural iron-worker. Until about April 1st, 1941, he earned approximately $28 a week. For some reason that does not appear his earnings thenceforward were much larger. The weekly wage payment thereafter varied from $33 to $124, depending upon time and overtime, with an average payment for the twenty-two weeks from then until the time of the decedent's death of $74.65. It is reasonable to suppose that those weekly wage items were subject to deduction for social security, unemployment compensation and income tax payments, but in the absence of proof we assume that the whole amount was "take-home" pay. From his weekly pay the decedent retained a sum that the petitioner at one time said was $25, at another time said was $15 and which a daughter of the petitioner estimated to be $20. We accept the last figure as correct. The decedent therefore paid weekly to his mother the average sum of $54.65 which she, as family custodian, kept and disbursed along with her own earnings. But that amount was by no means exclusively for the mother's support. It was used for the various expenses of the household which consisted of the decedent and his mother. Three weeks before the decedent's death $200 of it was turned back to him and used along with the sum of $100 which he had accumulated from his retained funds and a credit of $100 in buying a second-hand automobile in his own name and for his own purposes. The decedent had brothers and sisters who were married and lived away from home. The home was owned by the mother. It was assessed at $900 and valued by her at $1,400. The mother prorated the yearly household expenses to an average monthly table as follows:

"House tax ............................................ $5.00
Water tax .......................................... 1.00
Light and gas ...................................... 4.75
Coal heat .......................................... 5.00
Maintenance and labor for house ............... 45.00
Food ............................................... 80.00
Clothing (for my son and me) .................... 30.00
Linen .............................................. 2.00
Dry cleaning ... .................................... 2.00
Insurance .......................................... 6.92
Church ............................................. 3.00
Incidentals ...................................... 10.00
Doctors and medicine ............................. 8.50

$203.17"

It is not readily understandable how the maintenance charges, aside from taxes, water, light, gas and heat, on a house which, together with the lot on which it is located, is of the value of only $1,400 may reasonably amount to $45 a month or $540 a year. Nevertheless, lacking contradictory testimony, we accept that estimate as correct and as constituting a chargeable item of support in lieu of rent. There are other items which, obviously, were the joint expense of son and mother and which did not continue in their entirety after the son's death. But here, too, there being no contradictory evidence, we accept the figures as correct and as representing items incident to the mother's support with the exception of the clothing and the food, items which admittedly represent the cost of these necessaries for both mother and son and which, without more detailed proof one way or the other, should be subjected to deduction in reckoning the amount which the son actually contributed to the mother's support. The son frequently bought his own luncheons. We subtract $35 as an allowance for the son's food and $12.50 as an allowance for his clothing. With the deduction of these items, aggregating $47.50, from the total of the computation we have the cost of the mother's support at $155.67 per month. Applying against this figure the monthly earnings of the mother

at $60 we have a remainder of $95.67, or, using the month as consisting of four weeks, of $23.92 per week as the son's contribution towards the mother's support. The statutory direction, *R. S.* 34:15–13, is:

"In case of death, compensation shall be computed  *  *  * on the following basis: a. For one dependent, thirty-five per cent. of wages.  *  *  * g.  *  *  * in the case of persons only partially dependent,  *  *  * the compensation shall be such proportion of the scheduled percentage as the amounts actually contributed to them by the deceased for their support constituted of his total wages  *  .*  *."

Using that formula on a total weekly wage of $74.65 and an actual weekly contribution of $23.92 we are brought arithmetically to the figure of $8.35 as the proper weekly compensation to be allowed in the award.

The judgment below will be modified to that extent. Costs are not allowed.