(No. 29412.—

AIR CASTLE, INC., Defendant in Error, *vs.* THE INDUS-TRIAL COMMISSION *et al.*—(EDWARD LATOUR *et al.*, Plaintiffs in Error.)

*Opinion filed May 21, 1946.*

Lester B. Marshall, and Errett O. Graham, both of Chicago, for plaintiffs in error.

Angerstein & Angerstein, and Jacoby & Lyons, (Thomas C. Angerstein, and George W. Angerstein, of counsel,) all of Chicago, for defendant in error.

Mr. Justice Wilson delivered the opinion of the court:

Edward LaTour and his wife, Anna, filed an application for adjustment of claim against Air Castle, Inc., alleging the death on June 14, 1944, of their son, William LaTour, as the result of an accidental injury arising out of and in the course of his employment. An arbitrator found that the parents were partially dependent upon the earnings of their son, and awarded them the minimum amount of compensation. Upon review, the Industrial Commission set aside the arbitrator's award, found that the applicants were partially dependent upon the earnings of Edward LaTour to the extent of 27.32 per cent, and awarded them compensation at the rate of $17.63 per week for 128 weeks and $13.54 for one week. The superior court of Cook county vacated the decision of the commission. We have allowed the applicants' petition for writ of error for a further review of the record.

The sole question presented for decision is whether Edward and Anna LaTour, the plaintiffs in error, were partially dependent upon the earnings of their son William,

at the time of the latter's fatal injury, within the contemplation of paragraph (e) of section 7 of the Workmen's Compensation Act. (Ill. Rev. Stat. 1945, chap. 48, par. 172.7.) So far as relevant, the statute provides: "If no amount is payable under paragraph (a) or (b) of this section and the employee leaves any parent or parents, child or children, who at the time of disablement were partially dependent upon the earnings of the employee, then such proportion of a sum equal to four times the average annual earnings of the employee as such dependency bears to total dependency, but not less in any event than one thousand dollars, and not more in any event than three thousand seven hundred fifty dollars."

William LaTour became sixteen years of age on April 26, 1944. He attended a grade school in Chicago until about the middle of May, being then in the eighth grade. He left school, commenced to work, first, for one week at an A. &. P. store, and was paid $19 for his services. On May 23, he entered the employ of Air Castle, Inc., the defendant in error, as a stock handler. By a special arrangement with his employer, William attended a trade school one day each week, and continued in this employment until June 14, when he was accidentally killed. The family consisted of the parents and their only child and son, William. Edward LaTour, the father, had been employed by the Revere Copper and Brass Company for several years, and Anna LaTour, in February, 1943, entered its employ. The latter's employment was interrupted for a period of two months following an operation at a hospital on March 17, 1944. According to her, "Prior to June 14, 1944, my health was not so good." Although she resumed her work in May, 1944, from her testimony it appears that she did not work steadily. Edward LaTour's gross earnings for the year immediately preceding his son's death amounted to $2670.97, and Anna LaTour's earnings during the same period were $1264.55. There were substantial deductions,

the amounts varying from time to time, from the wages of each of the parents for Federal old age tax, income tax, war bonds, credit union, and insurance. The family lived on a modest scale, the rent of their apartment being thirty dollars per month, grocery bills averaged about twenty-five dollars weekly, laundry nearly two dollars, gas between three and four dollars monthly, and insurance one dollar and thirty-two cents per week. It also appears that, in the spring of 1944, William's parents were indebted to a finance company, having borrowed three hundred dollars in January, 1944. The next month, Edward borrowed an additional one hundred fifty dollars from a credit union at his place of employment. The proceeds of the first loan were used to purchase furniture, and those of the second to buy an automobile. In addition to the expenses mentioned, the parents were paying thirty dollars per month to the loan company, and ten dollars weekly to the credit union to reduce their debts. Other substantial family expenses incident to the maintenance of a family and the operation of a household were, of course, incurred. The parents had neither a checking account nor a savings account. When William commenced to work, only his father was then employed, his mother was recuperating from an operation and, obviously, the parents were not meeting their current expenses out of Edward LaTour's wages,—as Anna LaTour said, "because we were not making enough money to keep them up." In addition, William was sorely in need of clothes. He turned over his first week's wages amounting to nineteen dollars to his mother, who used the entire amount to buy him a suit, undergarments, stockings and shoes. On May 28, he received $25.66, his net wages from defendant in error. This money he gave to his mother, who added it to the family funds and, from this general fund, household and general living expenses, including clothing and food, were met. Anna LaTour gave William fifty cents each day he worked and, in addition, a dollar

when he went to a show. At the end of the week following William's receipt of his first wages from defendant in error, practically no money was left in the general fund. June 4, William was paid $16.63, as wages, and this money was turned over to his mother who used it to pay bills and to purchase clothing. Again, on June 11, he gave her $25.66, received as wages, and, once again, the mother placed this money in the family general fund, and used it to pay for groceries, household expenses, and to reduce past due bills. After William started to work for defendant in error, his mother bought him additional clothing, namely, a jacket, a winter coat, work clothes and other items, at a cost of forty-five or fifty dollars. After his accident, Anna LaTour received $18.10 from his employer for wages earned up to the time of his death. This money was applied on the funeral expenses.

At the inquest conducted by the coroner, a representative from an insurance company asked Edward LaTour if William contributed to the maintenance of the family, and he answered, "No, we didn't need it." Upon the hearing before the arbitrator, the father testified that he did not remember his answer to this question, but, in answer to a question by the coroner, replied that William's dependents were his mother and himself. An insurance company investigator testified that, after the inquest, he asked Edward LaTour whether he was dependent upon his son and that he replied in the negative. The investigator did not interrogate Anna LaTour at any time and, further, did not ask Edward LaTour whether he had purchased clothing for William from the money the latter earned, nor did he inquire whether William turned over his earnings to his mother.

Principles applicable to the factual situation presented are firmly established. Dependency, as the term is employed in the Workmen's Compensation Act, implies a present existing relation between two persons, where one

is sustained by the other, or looks to or relies on the aid of the other for support or for reasonable necessaries consistent with the dependent's position in life. (*Weil-Kalter Mfg. Co. v. Industrial Com.* 376 Ill. 48; *France Stone Co. v. Industrial Com.* 369 Ill. 238; *Bauer & Black v. Industrial Com.* 322 Ill. 165.) The decisive test, it is settled, is whether the contributions were relied upon by the applicant for his means of living, judging by his position in life, and whether he was to a substantial degree supported by the employee at the time of the latter's death. (*Weil-Kalter Mfg. Co. v. Industrial Com.* 376 Ill. 48.) The statute awards compensation where there is actual dependency at the time of the injury although such dependency might afterwards cease or even probably would cease in the future. (*Wasson Coal Co. v. Industrial Com.* 312 Ill. 241.) Furthermore, the Workmen's Compensation Act receives a practical and liberal construction, particularly in determining questions of dependency. (*Waechter v. Industrial Com.* 367 Ill. 256.) This being so, courts should not interfere with the finding of the Industrial Commission on fact questions relative to the existence and extent of dependency, if there be evidence to sustain the finding. *France Stone Co. v. Industrial Com.* 369 Ill. 238; *General Construction Co. v. Industrial Com.* 314 Ill. 58; *Novak v. Industrial Com,* 339 Ill. 292.

Plaintiffs in error have never contended that they were entirely dependent upon their son's earnings, their contention being, instead, that they were partially dependent, at the time of William LaTour's death, upon his contributions to them. A child contributes to the support of his parents, within the purview of the Workmen's Compensation Act, when he contributes a substantial sum to the support of the family, although this sum is less than the actual cost of his support and maintenance where the child is a minor or is in a position to demand legal support, as here, from his parents. (*Chicago, Wilmington and Franklin Coal Co. v.*

*Industrial Com.* 303 Ill. 540.) As pertinently stated in *General Construction Co.* v. *Industrial Com.* 314 Ill. 58, "The parents' income, their mode of living and the application of the boy's earnings, at least partially, to the maintenance of the home were of such a character as to justify an award on the ground of partial dependency. Partial dependency may exist even though the claimant could have subsisted without the decedent's contributions. The test is whether the contributions were relied on by the dependent for his means of living as determined by his position in life." *Peterson* v. *Industrial Com.* 331 Ill. 254, is to the same effect.

In the present case, the evidence discloses that in May, 1944, Anna LaTour, the mother of the deceased employee, was recuperating from an operation, and had been absent from her place of employment at least two months. Her husband's wages varied, his gross wages for the week ending May 20 being $34.02, and, for the next two weeks, $49.19 and $48.01, respectively. Substantial amounts earned by Edward LaTour were withheld by his employer for taxes, insurance and other deductions. He was indebted to a loan company, and was obligated to pay thirty dollars a month to the reduction of the loan. He also owed money to a credit union, and ten dollars per month were being deducted by his employer to the satisfaction of this debt. Funds borrowed had been used, in large measure, for household furnishings. As pointed out by the trial judge: "There is no question that the family was under some financial pressure and that loans had been made to enable them to purchase furniture." The evidence fails to disclose whether the expenses of Anna LaTour's hospitalization and recuperation had been met. In the spring of 1944, Anna LaTour's physical condition did not permit her to continue to supplement her husband's earnings, as she had been doing for over a year. It may be observed that her wages and, indeed, her employment were uncertain in the

extreme. In the light of this background, William LaTour, sixteen years of age, left school before the end of the school year and, thereafter, when employed by the defendant in error, went to a trade school one day a week, conformably to an arrangement made by his employer. At the time William went to work, he was in dire need of new clothes. According to his mother, only stockings and shirts had been purchased for him since January 1, 1944. Not until he became employed was adequate clothing purchased and supplied him. The funds for this purpose were derived, in part, from William's wages, which he regularly turned over to his mother. She placed his earnings with other family funds, and from the moneys in hand, bought him necessary clothing and paid for the usual household expenses.

Defendant in error argues that the contributions made by William did not exceed the cost of his clothes and spending money alloted him, and that his contributions, therefore, could not have been used and relied upon by his parents in defraying family expenses for the reason no money was left from his contributions which could be devoted to this purpose. The argument is fallacious. Edward LaTour turned over money to his wife, Anna, and she also received the wages of their son William. The funds were commingled, and it cannot be said that William's earnings were used solely to meet his own personal needs. As his mother testified, she paid for his winter coat and other articles of clothing "from the money we had all together and we used this money as it came." The statute does not require that applicants claiming dependency or partial dependency be held to the degree of accounting and bookkeeping contended for by defendant in error. Manifestly, clothing for William was as much a necessary family expense as lodging and food.

The apparent conflict between statements attributed to Edward LaTour at the coroner's inquest and the testimony

of his wife and himself before the arbitrator was, no doubt, accorded due consideration by the Industrial Commission in determining the degree of partial dependency to be only 27.32 per cent.

Defendant in error places reliance upon *L. M. & O. Motor Co.* v. *Industrial Com.* 335 Ill. 254, as decisive in its favor. In the case cited, the father was regularly employed by a railroad company and, at the time of his son's death in 1927, was earning approximately $260 a month. The family, consisting of the father, mother and the deceased son, resided in a relatively small, but now highly important, city in southern Illinois. We do not regard the family situations as parallel. William LaTour's father resided in a populous metropolitan area in June, 1944. We take judicial notice of the fact that living expenses had increased greatly during the years immediately preceding. Under these circumstances, gross earnings of William's father for the preceding year of $2670 were not only considerably less in actual dollars and cents than the earnings of the claimant father in the *L. M. & O. Motor Co. case,* but when the purchasing power of the former's earnings in 1944 are compared with the real value of the actual earnings of $3120 in 1927, it is obvious that even if the earnings of Edward LaTour's wife be deemed permanent, their combined wages were far from equal to the purchasing power of $3120 in 1927. The general conditions which obtained in 1944 must be recognized in considering whether an award for partial dependency to the extent of but little more than twenty-five per cent is manifestly against the weight of the evidence. Upon the record before us, with the plaintiffs in error admittedly under financial pressure, we cannot say the decision of the Industrial Commission that they were partially dependent upon the earnings of their minor son was manifestly against the weight of the evidence. It follows that the decision of the commission should not have been disturbed.

Many of the cases relied upon by defendant in error are analyzed in *France Stone Co.* v. *Industrial Com.* 369 Ill. 238, and no useful purpose will be served by a second analysis here.

The judgment of the superior court of Cook county is reversed and the award of the Industrial Commission confirmed.

*Judgment reversed; award confirmed.*