LORETTA VAN NESS, PETITIONER-APPELLANT, v. BOR-
OUGH OF HALEDON, DEFENDANT-RESPONDENT.

Submitted October 31, 1947—Decided January 29, 1948.

For the appellant, *Marcus & Levy* (*Isadore Rosenbloom,* of
counsel).

For the respondent, *William A. Davenport* (*Robert E.
Kiernan,* of counsel).

The opinion of the court was delivered by

HEHER, J.  An award of compensation under *R. S.*
34:15–7, *et seq.,* to the dependents of appellant's decedent
was reversed by the Supreme Court for what was found to
be a failure of proof of the relationship of employer and
employee between decedent and the respondent borough at
the time of the fatal mishap; and the question at the outset
is whether there was error in matter of law in this determina-
tion, for if the finding rests on conflicting evidence, or on
uncontroverted evidence reasonably susceptible of divergent
inferences, it is conclusive on error. *Mixon v. Kalman,* 133

*N. J. L.* 113. We take the view that the Supreme Court misapprehended the character of the relationship, and that the proofs conclusively demonstrate that decedent was engaged in the master's service at the time of his death.

Decedent was a "police marshal" of Haledon, designated as such under an ordinance which established a police department in the borough "consisting of a Chief of Police and such policemen and marshals" as should thereafter be appointed, and provided, *inter alia,* that "The compensation of the members of the department shall be determined by the Council;" that "The marshals shall be paid only for such time as they shall be engaged in actual duty assignment of the Mayor, Police Committee or Chief of Police;" and that "All orders and assignments for any member of the Police Department from the Mayor or Police Committee shall be made to and through the Chief of Police." On the night in question, while decedent was in attendance at a session of the Police Court of the Borough of North Haledon as a witness in a case involving the enforcement of the State Motor Vehicle Act, and thus in the pursuit of his official duties, word came of an accident in North Haledon which required immediate police attention. He hastened to the scene of the accident in a police radio car driven by a regular patrolman of Haledon, who had also undertaken to respond to the call, knowing that the North Haledon radio car was "out of call." A police captain of North Haledon, who was also in court, preceded them in another car. When it was found that an ambulance was needed, and the police captain could not make radio contact with the emergency ambulance corps in Haledon (which also served North Haledon), decedent drove the radio car at a high rate of speed (with siren sounding and red flasher working) to the ambulance station in Haledon and, in a highly emotional state, called for the ambulance, reversed the direction of the radio car and, after he had driven the vehicle but a short distance, with the ambulance behind, he suffered a fatal heart attack, diagnosed as a coronary occlusion induced by intense emotional strain and excitement. Decedent was provided with the usual equipment of a policeman, and was authorized to drive the radio car. While he

had regular private employment, he was continuously subject to call for police service day and night; and it was customary, to the knowledge of the superior officers, for the marshals to assist the regular patrolmen, without compensation, when not assigned to duty. The authorities of the Boroughs of Haledon, North Haledon and Prospect Park had entered into a reciprocal arrangement for mutual police assistance whereby their patrolmen responded to one another's police calls whenever the local radio car was "out of call." This was the case on the occasion in question.

These facts and circumstances, all found by the Supreme Court on evidence that was not the subject of dispute, definitively establish the basic employee relationship and decedent's engagement in the master's service at the time. The Supreme Court ruled that the cited ordinance was quite specific in its provisions "as to the mode and manner by which assignments to police duty" were to be made, and to hold that the relationship of master and servant came into existence "by reason of the voluntary acts" of decedent at the time in question "would be to enlarge the authority and responsibility set forth in the ordinance without legal justification;" and that, while there was testimony that "it was the custom" for policemen "who chanced to be at police headquarters, even though not assigned to police duty, to accompany police officers regularly assigned to duty at the time," and to assist in the performance "of some regular or emergent duty," there was no evidence that the practice was "acquiesced in or approved" by the local governing body, or that it was ever called to its attention, or that compensation was rendered for decedent's services on the occasion in question, or a bill submitted to the borough for such services. The case of *Campbell* v. *Hackensack*, 115 *N. J. L.* 209, was deemed controlling. This we consider a misinterpretation of the ordinance and of the relationship between the police officers and the municipality. The ordinance is not to be so rigidly applied, for that would be at variance with the nature of the duty and responsibility of policemen to the public; and there is no intimation of this restrictive purpose in the terms chosen to express the intention of the governing body.

Under the ordinance, a marshal is a part-time peace officer subject to call for the service as the occasion demands, and entitled to compensation only for the service rendered in accordance with specific assignments. But such an officer has the ordinary powers of a constable at common law, to keep the peace and preserve order, and protect life, limb and property, without limitation as to time or particular assignment. *Vide Joyce* v. *Parkhurst*, 150 *Mass.* 243; 22 *N. E. Rep.* 899. If decedent was not engaged in the pursuit of his duties as a police officer, as the borough contends, how is the service to be classified? It is a commonplace that a policeman is "always on duty." He is, indeed, in the sense that, even though not on regular service or a special or temporary assignment, he is yet chargeable with the same degree of responsibility, in dealing with an emergency or a special need, as if on a formal assignment. He is vested with police authority and obliged to exercise it when the occasion arises. There is no difference in this regard between a regular policeman and a marshal appointed for part-time service under the ordinance here. Marshals are "regular" members of the police department, appointed for part-time service. *Albert* v. *Caldwell*, 123 *N. J. L.* 266. When an emergency arises or there is sudden need for the exercise of the police officer's powers, he cannot wait for specific authorization; and one who so measured his duty would soon be relieved of his commission.

The right to compensation under the ordinance is not the determinative consideration; certainly, the servant who works overtime without compensation, in the zealous service of his master's interest, is not out of the pale of the act's protection. While an authorized assignment to duty is ordinarily a prerequisite to the right to compensation, incidental police service rendered while the general relationship subsists are classable as within the ambit of the employment, although not specifically compensable under the ordinance. Here, an ambulance was needed for the immediate hospitalization of the victim of the accident; and decedent undertook to supply the need, conceiving that to be his duty, and lost his life in the effort. Custom had sanctioned the course taken by decedent.

It was indubitably within the contemplation of the borough authorities that upon the occurrence of an untoward event, a marshal in the area, even though not specifically assigned to duty, would do whatever a faithful police officer would deem necessary in the circumstances. This is not to enlarge the authority conferred by the ordinance. The principle of the case of *Campbell* v. *City of Hackensack, supra,* is not applicable. The provision of the ordinance for part-time service was plainly not designed to be exclusive. What was done here was the exercise of a power reasonably to be implied from the nature of the service; and, while so engaged, the policeman was pursuing the master's business. Compare *McAnney* v. *Galloway Township,* 120 *N. J. L.* 311.

In these circumstances, this court may determine the facts and direct the entry of judgment in conformity therewith. *Breheny* v. *Essex County,* 134 *N. J. L.* 129.

It is urged that "there is no legal proof of an injury by accident" or of "causal relationship," in that "there is no distinct episode or incident which can be pointed to as an accident," and, in the absence of an autopsy, the medical conclusion of a fatal coronary occlusion must needs be purely speculative. The result in the Supreme Court rendered a consideration of these questions unnecessary.

There is, of course, a presumption of death from natural causes; but the evidence is entirely convincing that the immediate cause of the officer's death was a coronary occlusion induced by emotional and nervous strain attending the performance of his duty, and thus his demise was the result of an accident which arose out of and in the course of his employment. *Geltman* v. *Reliable Linen and Supply Co.,* 128 *N. J. L.* 443; *Breheny* v. *Essex County, supra.*

The judgment of the Supreme Court is reversed, and the judgment of the Passaic Common Pleas is affirmed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, BODINE, HEHER, COLIE, WACHENFELD, BURLING, WELLS, DILL, FREUND, McLEAN, SCHETTINO, JJ. 12.