41 N.J. Super. 206 (1956)
124 A.2d 315
JOHN P. RYAN, PETITIONER-RESPONDENT,
v.
ST. VINCENT de PAUL ROMAN CATHOLIC CHURCH, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued July 2, 1956.
Decided August 3, 1956.
*208 Before Judges CLAPP, HALL and HEGARTY.
Mr. Aaron Gordon argued the cause for petitioner-respondent (Mr. Louis Chodash, attorney).
Mr. Walter R. Hespe argued the cause for respondent-appellant (Mr. Walter H. Jones, attorney).
The opinion of the court was delivered by CLAPP, S.J.A.D.
This is a workmen's compensation case. The employer appeals from a judgment of the Hudson County Court, affirming a judgment of the Workmen's Compensation Division which awarded compensation to the employee.
The employee, the sexton of St. Vincent de Paul, Bayonne, N.J., was injured March 29, 1952. As a result of a prior, comparatively minor injury to an arm, he had been receiving workmen's compensation for a period of 34 days to and including March 28, 1952 and (as the employer states) "was unable to work during that period." For the time stated, the keys to the church, which theretofore he had always carried, were turned over to one designated the "relief man." The employee testified that on March 27, a Thursday, the acting pastor, his "boss," came to his home and told him that "the job was all right," and that (as the housekeeper testified) when he was feeling able, he was to go to the rectory to pick up the keys so as to open the church for the first Mass on Sunday, March 30, at 4:45 A.M. On *209 Saturday night, March 29, at about 7:00 P.M., he was on his way to the rectory for this purpose, in fact had reached the street adjacent to the church property, when he was struck by an automobile. The proceeding here is for the injuries thus sustained.
We may dispose summarily of the employer's various arguments on the facts. Imputations are cast on the credibility of the testimony of the employee (whom the deputy director characterized as a "simple, sincere and wholly truthful person") and of his housekeeper, because of comparatively minor points, which need not be dealt with here. Stress is also put on a written statement procured from the employee by an insurance investigator. But this statement was somewhat discredited by the deputy director because of what he regarded as a certain lack of sincerity on the part of the investigator, while on the stand. Besides, the statement merely declares (if we may stress the word "then") that "the priest did not know that I was coming up then [on Saturday night]"; this does not contradict the employee's testimony.
Furthermore, the employer's counsel in his argument on the facts tried to make something of the circumstance that the employee had not brought the acting pastor into court as a witness in order to corroborate the employee's story. But the fact is that the deputy director advised the employer's counsel himself to produce this priest, his own insured, and counsel replied, saying it was impossible to get him to come to court.
There are factual questions, too, as to how many sets of keys there were, as to whether the substitute sexton was to get his keys to the employee (and if so, when), as to what the employee intended to do, if anything, at the church on Saturday night in addition to picking up the keys, and as to who was to lock or close the church that night; but those questions were not raised below. With concurrent findings by the Division and the County Court, we clearly should not interfere with respect to the factual aspects of this case; there was no glaring irreconcilability between the investigator's statement and the testimony, nor any palpable error *210 or plain injustice committed below. Mahoney v. Nitroform Co., Inc., 20 N.J. 499, 507 (1956).
The employer, however, accepting arguendo the facts as found below, raises other questions, namely, first, whether the relation of employer and employee existed at the time of the accident and, second, whether the accident arose out of and in the course of the employment. With respect to the first question, the argument is that the employment relation had been suspended when the first accident occurred and that at the time of the second accident it had not yet been reinstated. In support of this contention, it is maintained first that since such a relationship is of a consensual character and since the employer had no knowledge of the employee's intention to come to the church at the particular time he chose, it "could not possibly have consented to his return at that time." But this does not establish that the employer did not consent. One consenting on Thursday to the performance of an act at sime time before Sunday may be taken to be consenting at the time of the performance.
The employer next claims that there was no employment relation on Saturday night because he "had not * * * reported for duty." Riggs v. New York Shipbuilding Corp., 16 N.J. Misc. 92 (Sup. Ct. 1938). But here the priest had come to his home on Thursday and then placed him under a duty to pick up the keys. He was engaged in performing this duty at the time of the accident.
Nor does the fact that the employee was not being paid wages at the time of the accident  assuming that to be the fact  establish that there was no employment relationship. Van Ness v. Borough of Haledon, 136 N.J.L. 623, 626 (E. & A. 1947). If the claimant was not being paid for his work on Saturday, he may have been (and doubtless was) undertaking to get the keys in return for the wages he was to receive for the period commencing the next day.
We need not consider the problem presented where a person entering a new employment relation which is to start on Sunday, is required to perform some act before then, wholly antecedent to, and constituting no part of, the employment *211 service. In the present case the claimant was merely resuming an interrupted employment or perhaps was passing to an active status as sexton from some inactive status which he had held while his arm was mending. Moreover (and this involves us also in the question as to what was the course of the employment) the getting of the keys was an integral part of the employment service; it was necessary for him at some time prior to Sunday to pick up the keys (which he had always carried) in order to open up the church that morning. Looking at the point from every angle, it must be said that the journey for the keys was an assignment of the employer given as a part of the employment relation and that in performing that assignment the claimant had reentered upon that relation or at least upon its active pursuit.
The main thrust of the employer's oral argument, however, lay in another direction; this branch of the argument assumes the existence of an employment relation, but questions whether the employee's trip to the church Saturday night lay within its course. The general rule is that the journey made by an employee "on his way to and from his regular place of employment" does not come within the course of employment. Moosebrugger v. Prospect Presbyterian Church, 12 N.J. 212, 214 (1953). The rule is founded upon the supposition (which has a certain obvious cogency) that the parties would not have thought of the act of going to and from work as a part of the service for which the worker was employed.
However, this rule, being judicial and not legislative in character, is not rigid, but adjusts itself to reason. So where an employer requests an employee to make a special trip in order to perform a special errand or service, the trip itself enters into the employer's contemplation and quite naturally would or should be looked upon by the parties as a part of the service for which the worker has been employed; hence it comes within the course of the employment. On the other hand, as held in Moosebrugger, where a church calls upon the sexton to perform some service regularly in *212 the evening, involving a trip from his home back to his regular place of employment and where this service in fact constitutes a part of his routine work along with his work during the day, the parties are presumed to place that trip upon the same footing as that occupied by the trip to and from work in the daytime.
There can be no question  in fact the employer raises none  but that the trip made by the employee here to secure the keys was out of the ordinary and therefore special within the rule enunciated in Moosebrugger. The picking up of the keys, which (as stated above) was necessary in order to open the church Sunday morning, was certainly not so slight a circumstance as to be disregarded. Grotsky v. Charles Grotsky, Inc., 121 N.J.L. 461 (Sup. Ct. 1938), affirmed 124 N.J.L. 572 (E. & A. 1940); Gelbart v. New Jersey Federated Egg Producers Ass'n, 17 N.J. Misc. 185, 192 (W.C. Bur. 1939).
The employer however contends that the employee was not on an errand or service, because he was not acting under an instruction to get the keys at a specified time. The failure to specify the time is an immaterial circumstance. In Bradley v. Danzis Pharmacy, 5 N.J. Super. 330, 331 (App. Div. 1949), the employee was told to pick up certain medicine, but "no instructions were given as to whether" he should do so "before or after supper." We see nothing to take the present case out of the so-called special errand rule.
The County Court very properly corrected an obvious error in the Division's judgment in order to make it conform with the deputy director's finding. The power of that court to modify the judgment below clearly comprehends the correction of an error therein, disclosed by the record.
Affirmed.