JOSEPH RICCIARDI, PETITIONER-APPELLANT, v. DAMAR PRODUCTS COMPANY, RESPONDENT-RESPONDENT.

Argued March 15, 1965—Decided June 14, 1965.

56

*Mr. Norman Peterkin* argued the cause for appellant (*Messrs. Friedman & D'Alessandro,* attorneys).

*Mr. Herman D. Michels* argued the cause for respondent (*Mr. Roger L. Toner,* on the brief; *Messrs. Toner, Crowley, Woelper & Vanderbilt,* attorneys).

The opinion of the court was delivered by

WEINTRAUB, C. J. Petitioner seeks an award under the workmen's compensation law by reason of the death of his wife. He prevailed in the Division of Workmen's Compensation, but the County Court reversed upon a finding that petitioner was not a dependent of the decedent. The Appellate Division affirmed the County Court, finding both (1) that the accident did not occur in the course of employment and (2) that there was no dependency, one judge however disagreeing with the first of these findings. 82 *N. J. Super.* 222 (1964). We granted certification. 43 *N. J.* 354 (1964).

## I.

The deceased was killed on July 2, 1960 in an automobile accident while returning home from a picnic sponsored by her employer. With respect to liability for compensation, the issues are twofold: (1) whether the picnic was an event within the coverage of the statute and (2) whether the statute protected the deceased in going to and from the picnic.

The facts are not in dispute. The picnic was suggested by an employee. The employer thought well of the idea, its vice-president testifying that "We had a very successful Christmas party in 1959, which made the people and the management of the Company so pleased that we wanted to continue on an entertainment basis in some form or another, twice a year." The company paid about 98 percent of the expenses of the picnic, the union contributing the balance. The vice-president just referred to said "It was good for the Company," explaining that the outing was intended to improve relations between employees and employer and among the employees. The company and its two affiliates are engaged in the mail order business in which there is a fluctuating need for help and hence a high rate of labor turnover.

The picnic was held on a non-working day. No one was required to attend, but management wanted a good turnout and the employee committee formed with management's approval urged all employees to attend. The president of the company spoke at the picnic and awarded some six or seven savings bonds for perfect attendance during the first half of the year. The employer thought enough of the event to schedule another picnic for the following year.

■■ We think it clear the picnic was sponsored by the employer in part at least to further its own interests. That the employees were free to attend or to stay away is not a critical fact. Nor is it decisive that wages were not paid those who did appear, see *Van Ness v. Borough of Haledon*, 136 *N. J. L.* 623, 626 (*E. & A.* 1948); *Filson v. Bell Telephone Laboratories, Inc.*, 82 *N. J. Super.* 185 (*App. Div.*

1964) ; *Ryan v. St. Vincent de Paul Roman Catholic Church*,
41 *N. J. Super.* 206, 210 *(App. Div.* 1956), or that the picnic
was held at a place other than the work premises. Rather the
question is whether the event is sufficiently work-connected
to bring the employees within the coverage of the compensa-
tion law, a law which provides protection for employees, not
because of fault or failure of the employer, but rather upon
the belief that the enterprise itself should absorb losses which
inevitably and predictably are an incident of its operations.

██ Where, as here, the employer sponsors a recreational
event for the purpose of maintaining or improving relations
with and among employees, the employees gratify the employ-
er's wish by attending and thus serve the employer's business
aim. It therefore is correct to say the Legislature intended
the enterprise to bear the risk of injuries incidental to that
company event. Hence the picnic itself was a covered affair.
In point is *Kelly v. Hackensack Water Co.*, 10 *N. J. Super.*
528 *(App. Div.* 1950), *Id.*, 23 *N. J. Super.* 88 *(App. Div.*
1952). The controlling doctrine is expounded in *Complitano
v. Steel & Alloy Tank Co.*, 34 *N. J.* 300 (1961), reversing the
judgment of the Appellate Division upon the dissenting
opinion therein of Judge Conford, 63 *N. J. Super.* 444, at *p.*
456. See *Cuna v. Board of Fire Commissioners, Avenel*, 42
*N. J.* 292, 305–306 (1964) ; *cf. DuCharme v. Columbia
Engineering Co.*, 31 *N. J. Super.* 167 *(App. Div.* 1954).

Had the deceased suffered her fatal injuries at the picnic,
the accident would be compensable under the cases just cited.
Here the fatal accident occurred on the trip home and hence
the further question is whether the compensation statute
covers that travel. The facts are that it was expected the
employees would arrange among themselves for transporta-
tion, and two of the executives made their cars available for
the transportation of those who could not. We gather the
deceased was taken to the picnic by a coemployee and was
being driven directly home from the picnic by another em-
ployee when she was killed.

■ Our cases accept as a general rule the proposition that an employee is not covered while going to or from his regular place of work. *O'Brien v. First Camden National Bank & Trust Co.*, 37 *N. J.* 158, 162 (1962); *Morris v. Hermann Forwarding Co.*, 18 *N. J.* 195 (1955); *Moosebrugger v. Prospect Presbyterian Church*, 12 *N. J.* 212 (1953). That rule is not free from dispute since travel to and from the place of work quite obviously is essential to the work itself. Indeed, not infrequently employers assume the expense of such travel.

■■ The uneasy footings of the general rule have led to a number of exceptions to it. See dissenting opinion in *Moosebrugger, supra* (12 *N. J.*, at *p.* 216). One is that the compensation act will cover the employee during transportation furnished or paid for by the employer. *Jasaitis v. City of Paterson*, 31 *N. J.* 81, 84 (1959); *Filson v. Bell Telephone Laboratories, Inc., supra* (82 *N. J. Super.* 185). Another, and the one more directly involved in the case on hand, is that where an employee pursues a special errand or mission, as distinguished from reporting to the regular place of his day's work, he is within the protection of the statute during the travel to and from the scene of his special errand. Hence if the point of departure or return is the employee's home, the travel is covered. See *Bobertz v. Board of Education*, 135 *N. J. L.* 555 (*E. & A.* 1947); *Ryan v. St. Vincent de Paul Roman Catholic Church, supra* (41 *N. J. Super.* 206); *O'Reilly v. Roberto Homes, Inc.*, 31 *N. J. Super.* 387 (*App. Div.* 1954); *Goldmann v. Johanna Farms, Inc.*, 26 *N. J. Super.* 550 (*Cty. Ct.* 1953). In one case, where the employee had to engage a baby sitter so that he could attend a dinner in furtherance of his employment, the employee remained within the protection of the statute in taking the baby sitter to her home. *Harrison v. Stanton*, 26 *N. J. Super.* 194 (*App. Div.* 1953), affirmed o. b. 14 *N. J.* 172 (1954).

■ Here the employer could not achieve the business aim of the outing unless the employees reached the picnic scene. Travel to and from it were of course essential. The event was

a special one, and we see no reason why, under the special-mission exception we are discussing, the travel should not be covered along with the picnic itself. This is the same result reached in other jurisdictions which hold that a company-sponsored recreational outing is protected by the compensation law.[1] See *Stakonis v. United Advertising Co.*, 110 *Conn.* 384, 148 *A.* 334 (*Sup. Ct. Err.* 1930); *Dodge v. Wm. J. Keller, Inc.*, 304 *N. Y.* 792, 109 *N. E. 2d* 85 (*Ct. App.* 1952); *Miller v. Keystone Appliances, Inc.*, 133 *Pa. Super.* 354, 2 *A. 2d* 508 (*Super. Ct.* 1938).

## II.

We turn to the issue of dependency. It is not disputed that a man may be a dependent of his wife; *N. J. S. A.* 34:15–13, *subd. g* expressly so provides. He may be a total dependent, *Wartell v. McGarrity*, 20 *N. J. Misc.* 497, 29 *A. 2d* 408 (*Dept. Labor* 1942), or a partial dependent. Partial dependency is here claimed.

The general test of dependency is well put in 2 *Larson, Workmen's Compensation Law* § 63.11, *p.* 102 (1961):

"A showing of actual dependency does not require proof that, without decedent's contributions, claimant would have lacked the necessaries of life. The test is whether his contributions were relied on by claimant to maintain claimant's accustomed mode of living."

Upon this standard, the claimant is entitled to prevail.

---

[1] Of course, such travel is not covered in states which hold the recreational event itself is beyond the compensation statute. *Wooten v. Roden*, 260 *Ala.* 606, 71 *So. 2d* 802 (*Sup. Ct.* 1954); *Industrial Commission of Colorado v. Murphy*, 102 *Colo.* 59, 76 *P. 2d* 741, 115 *A. L. R.* 990 (*Sup. Ct.* 1938); *Tom Joyce 7 Up Co. v. Layman*, 112 *Ind. App.* 369, 44 *N. E. 2d* 998 (*App. Ct.* 1942); *Lawrence v. American Mutual Liab. Ins. Co.*, 92 *R. I.* 1, 165 *A. 2d* 735 (*Sup. Ct.* 1960); *Auerbach Co. v. Industrial Commission*, 113 *Utah* 347, 195 *P. 2d* 245 (*Sup. Ct.* 1948); *cf. F. Becker Asphaltum Roofing Co. v. Industrial Commission*, 333 *Ill.* 340, 164 *N. E.* 668 (*Sup. Ct.* 1928); *Maeda v. Department of Labor and Industries*, 192 *Wash.* 87, 72 *P. 2d* 1034 (*Sup. Ct.* 1937).

Petitioner and the decedent were married in August 1958. He was a patrolman, earning $4,500 per year, and she was unemployed. The couple resided with petitioner's mother for about four or five months, after which, the wife having obtained work at $60 per week, they moved to an apartment of their own, furnished out of their joint savings. Later the wife became ill and underwent surgery. Without her earnings, the couple could not maintain their mode of living and hence they returned to the home of petitioner's mother where they were able to stay for but $20 per week. When the wife obtained employment with the respondent, the couple again planned to acquire a place of their own. They pooled their earnings, purchased the necessary furnishings, and were to occupy their new apartment the day she was killed.

At the time of her death the decedent was working a few days a week for which her earnings averaged $27.81 gross and $23.60 net. Of this she withheld $5 for her personal use. Petitioner was then earning $4,700 per year gross. Upon these figures, the employer contends the decedent drew benefits from the family fund in excess of her dollar contribution to it. That conclusion is reached by charging to her support one-half of the expenditures from the common fund. But this is not the test of dependency. Two may be able to live together more cheaply than alone, and when by pooling their earnings two set a standard neither could reach separately, they are mutually dependent even though their contributions to the fund are unequal.

The question then is whether petitioner depended upon his wife's income to live at the standard the couple set for themselves. We know the couple had to surrender their apartment when she was unable to work and were able to arrange for another one only after she again became employed. His dependency upon her seems evident. The dollar amount of it is measured by deducting from the contribution made by the deceased only so much as was expended for her alone. No deduction may be made for items such as rent, heat, light, and telephone, which are essentially the same

whether the apartment is occupied by one or by two and which the survivor would have to meet in full to continue the established mode of living. This is the approach adopted in *Rolnick v. Industrial Engineers*, 133 *N. J. L.* 475 (*Sup. Ct.* 1945), affirmed o. b. 135 *N. J. L.* 201 (*E. & A.* 1947), and *Delanoy v. New Jersey Dairy Laboratories*, 130 *N. J. L.* 407 (*Sup. Ct.* 1943). Thus viewing the facts recited above, we think it plain that petitioner was a partial dependent of his wife.[2]

The more difficult question is how to calculate the rate of compensation. As to *total* dependents, the statute provides the compensation rate shall be a percentage of the total *wages* of the deceased, and in the case of one such dependent the percentage is 35%. *N. J. S. A.* 34:15–13, *subd. a.* As to *partial* dependents (with certain exceptions not here pertinent), subsection g of the cited section provides that "the compensation shall be such proportion of the scheduled percentage as the amount actually contributed to them by the deceased for their support constituted of his total wages and

---

[2] We merely note some views which seem not to have been projected in our State but which find support elsewhere. In some States the services contributed by the deceased, as well as cash contributions, are taken into account in determining dependency. *Chapman v. Hector J. Cyr Co., Inc.*, 135 *Me.* 416, 198 *A.* 736 (*Sup. Jud. Ct.* 1938); *Gossen v. Borgholm Tp.*, 174 *Minn.* 227, 218 *N. W.* 882 (*Sup. Ct.* 1928); *Colby v. Varney*, 97 *N. H.* 130, 82 *A.* 2d 604 (*Sup. Ct.* 1951); *Id.*, 98 *N. H.* 99, 95 *A.* 2d 113 (*Sup. Ct.* 1953); *Jewell v. Olson Construction Co.*, 122 *Vt.* 434, 175 *A.* 2d 509 (*Sup. Ct.* 1961). Further, dependency has been found in the circumstance that the deceased son, by the earnings he contributed, relieved his parent of the obligation to support him. *Air Castle, Inc. v. Industrial Commission*, 394 *Ill.* 62, 67 *N. E.* 2d 177 (*Sup. Ct.* 1946). Upon that approach the son's contribution is not reduced by the board furnished to him by the dependent parents. See *Mahoney v. Gamble-Desmond Co.*, 90 *Conn.* 255, 96 *A.* 1025, *L. R. A.* 1916E, 110 (*Sup. Ct. Err.* 1916); *Vogel v. Williams*, 118 *Ind. App.* 451, 79 *N. E.* 2d 548 (*App. Ct.* 1948); *Heughan's Case*, 129 *Me.* 1, 149 *A.* 151 (*Sup. Jud. Ct.* 1930); *Travelers' Ins. Co. v. Davis*, 42 *S. W.* 2d 945 (*St. Louis Ct. App.* 1931); but see *Spurgin v. Spurgin*, 152 *Kan.* 212, 103 *P.* 2d 889 (*Sup. Ct.* 1940), and cases there cited.

None of the cases cited in this footnote involved a claim by a husband for the death of his wife.

the provision as to a $10.00 minimum shall not apply to such compensation." Hence as to one partial dependent the formula is this:

$$\frac{\text{contribution}}{\text{wages}} \times \text{scheduled percentage} \quad (.35 \times \text{wages}).$$

It is at once apparent that "wages" play no role in this formula since "wages" are used both to divide and to multiply. The factor of wages being thus neutralized, what remain are the amount of the contribution and the percentage rate. In short, a partial dependent receives 35% of the amount of the contribution, and according to the formula it matters not at all how large or small were the decedent's total earnings. It seems odd that a dependent should receive 35% of *total wages* if the dependent subsisted fully on the contribution but only 35% of the *contribution* if the dependency on the same contribution was less than total, but that is our statutory scheme and apparently 15 other states have it too. 2 *Larson, Workmen's Compensation Law* § 64.20, *p.* 127 (1961).

██ Upon the basis of the foregoing, the weekly compensation rate would be 35% of the deceased's net contribution determined, as set forth above, by deducting from her gross contribution the disbursements made therefrom on her sole account. But the husband points out that decedent worked less than a full week and contends that since "wages," as defined by *N. J. S. A.* 34:15–37, means the amount payable for a full week's work, the compensation rate should reflect such full-time earnings. No doubt, as we said in *Maver v. Dwelling Managers Co.,* 34 *N. J.* 440 (1961), the statutory scheme is geared to a constructed weekly wage rather than to part-time earnings, and in the case of *total* dependency, a constructed weekly wage would be appropriate. See *Miles v. Wyatt,* 138 *Kan.* 863, 28 *P. 2d* 748 (*Sup. Ct.* 1934); *Stines v. Farmers Lumber & Supply Co.,* 251 *Iowa* 320, 100 *N. W. 2d* 415 (*Sup. Ct.* 1960). The question is whether a constructed weekly wage should also be used in calculating bene-

fits payable to a partial dependent, and if so, how the calculation should be made.

If the amount of the contribution to a partial dependent would likely remain the same even if the decedent worked full time, it may well be that the statutory purpose would be met if the partial dependent received the statutory percentage of the actual contribution and no more. But where the deceased intended to work full time and contribute more in that event, it would disserve the legislative aim to confine the award to a percentage of a contribution which was restricted at the moment of death only by the lack of an opportunity for full-time work. In such circumstances the true loss is the contribution which the contemplated full employment would have permitted. That is the case on hand, for the husband testified the deceased intended to work full time, as she had done when they lived in their first apartment, and there is no reason in the record not to credit this testimony.

As pointed out above, the formula for calculating the weekly rate payable to a partial dependent is so phrased that only the actual contribution to the dependent and the statutory percentage play a part, and hence, if the formula were executed literally, nothing would be gained by increasing part-time "wages" to the constructed weekly rate. Yet the policy of the statute is that an award shall reflect the true loss and to that end "wages" shall be the pay for the customary work week. Indeed, on its face the statutory formula relating to partial dependency adheres to that policy since it speaks of "wages" and thus refers to the definition of "wages" in *section 37*, even though the draftsman seemingly was unaware that in the actual operation of his formula, "wages" would neutralize "wages." The evident policy of the law that compensation be based on full-time earnings must prevail and hence the formula for calculating the rate payable to a partial dependent must be adjusted to reflect that policy.

The adjustment can be made in two ways. One would be to use the constructed weekly "wages" in calculating "the scheduled percentage" (*i.e.*, 35% $\times$ "wages") but to use only

the actual earnings together with the actual contribution in the fraction $\dfrac{\text{contribution}}{\text{wages}}$. This approach, however, could misstate the extent of the partial dependency if it is likely the deceased upon earning a full week's pay would have used a different proportion of it for the deceased's sole benefit. Hence it may be more accurate to follow another approach, *i.e.*, to find what would have been the actual net contribution to the dependent if the deceased had earned a full weekly wage and then apply the statutory percentage of 35 to that net contribution. The trier of the facts may use either of the approaches described in this paragraph, or consider both, as the full circumstances of the case may suggest, to reach an equitable judgment. In the nature of the subject, a substantially correct result is all that can be expected, and a measure of sound speculation is inevitable and tolerable.

■■■ Petitioner is entitled to an award upon the basis of the foregoing views. The parties may wish to supplement the record in the light of them. Petitioner of course is also entitled to the statutory burial allowance. *N. J. S. A.* 34:15–13, *subd. i.*

The judgment of the Appellate Division is reversed and the matter remanded to the Division of Workmen's Compensation for further proceedings in harmony with this opinion.

PROCTOR, HALL and HANEMAN, JJ. (dissenting). We dissent for the reasons stated by Judge Gaulkin in the Appellate Division. 82 *N. J. Super.* 222 (1964).

*For reversal* — Chief Justice WEINTRAUB and Justices, JACOBS, FRANCIS and SCHETTINO—4.

*For affirmance*—Justices PROCTOR, HALL and HANEMAN —3.