CAROL A. STONE, PETITIONER-APPELLANT, v. NEW JERSEY HIGHWAY AUTHORITY, RESPONDENT, v. GLADYS STONE, PETITIONER-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued April 16, 1985—Decided June 11, 1985.

130

Before Judges PRESSLER, BRODY and COHEN.

*Charles Lee Thomason* argued the cause for petitioner-appellant (*Evans, Koelzer, Osborne & Kreizman,* attorneys; *Charles Lee Thomason* on the brief).

*John Paul Doyle* argued the cause for petitioner-respondent (*Doyle* and *Oles,* attorneys; *John Paul Doyle* on the brief).

No brief was filed on behalf of respondent New Jersey Highway Authority.

The opinion of the court was delivered by

BRODY, J.A.D.

This appeal requires us to resolve a dispute over the distribution of dependency benefits under the Workers' Compensation Act. At the time of the work-related accidental death, the worker's widow, Carol Stone, and Dawn, her minor daughter from a former marriage, constituted the decedent's household. He was also survived by his former wife, Gladys Stone, who lives with Stacy and Colleen, two minor children of the decedent's marriage to Gladys. For the five years from the divorce until his death, the decedent paid $25 a week for the support of each of his two natural children pursuant to an agreed upon term of the judgment. Their mother earned $18,000 the year of his death. She never sought additional support for the girls. The widow's income was negligible. All

agree that Carol, Dawn,[1] Stacy and Colleen qualify as dependents under the Act, and that Carol and Dawn were wholly dependent. The compensation judge determined that as a matter of law all four were wholly dependent, thereby rejecting as immaterial Carol's claim that as a matter of fact Stacy and Colleen were only partially dependent. We reverse and remand for a determination of the actual dependency of Stacy and Colleen.

At issue is the interpretation of *N.J.S.A.* 34:15–13,[2] which provides for the computation and distribution of compensation

---

[1]Dependents can include "stepchildren." *N.J.S.A.* 34:15–13(f).

[2]*N.J.S.A.* 34:15–13 provides in relevant part:

Except as hereinafter provided, in case of death, compensation shall be computed, but not distributed, on the following basis:
  a.  For one dependent, 50% of wages.
  b.  For two dependents, 55% of wages.
  c.  For three dependents, 60% of wages.
  d.  For four dependents, 65% of wages.
  e.  For five or more dependents, 70% of wages.
  f.  The term "dependents" shall apply to and include any or all of the following who are dependent upon the deceased at the time of accident or the occurrence of occupational disease, or at the time of death, namely: husband, wife, parent, stepparents, grandparents, children, stepchildren, grandchildren, child in esse, posthumous child, illegitimate children, brothers, sisters, half brothers, half sisters, niece, nephew. Legally adopted children shall, in every particular, be considered as natural children. Dependency shall be conclusively presumed as to the decedent's spouse and to the natural children under 18 years of age of decedent who were actually a part of the decedent's household at the time of the decedent's death.... The foregoing schedule applies only to persons wholly dependent, and in the case of persons only partially dependent, except in the case of the surviving spouse and children who were actually a part of the decedent's household at the time öf death, the compensation shall be such proportion of the scheduled percentage as the amounts actually contributed to them by the deceased for their support constituted of his total wages and the provision as to a minimum of 20% of the average weekly wage as set forth in paragraph a. shall not apply to such compensation.
  ....
  g.  Compensation shall be computed upon the foregoing basis. Distribution shall be made among dependents, if more than one, according to

to dependents of a worker accidentally killed in the course of his employment. Total weekly compensation to be shared by all dependents is computed on a graduated scale of percentages of the decedent's wages, subject to a maximum, and depends upon the number of dependents. The more dependents, the higher the percentage. The four dependents here are entitled to share $236 a week, the maximum death benefits for four dependents. If all four were wholly dependent on the decedent, each would be entitled to $59 a week. If, however, Stacy and Colleen are partially dependent, as Carol contends, they would only be entitled to that percentage of $236 as the decedent's actual contribution to their support bore to $398, his total wages. *N.J.S.A.* 34:15–13(f). *See Ricciardi v. Damar Products Co.*, 45 *N.J.* 54, 64–67 (1965). If we assume that the decedent's contribution to Stacy and Colleen was no more than the $25 a week he paid for each under the divorce judgment, as partial dependents each would be entitled to 6.28%[3] of $236 or $14.82. In that case, Carol and Dawn would receive $103.18 each. Stated generally, once the amount of total compensation is determined by the number of dependents, the less a partial dependent receives, the more a total dependent receives. *See State v. Gosnell*, 106 *N.J.Super.* 279, 284 (App.Div.1969).

The statute provides the following as to Stacy's and Colleen's dependency status:

... [I]n the case of persons only partially dependent, except in the case of the

---

the order of the Division of Workers' Compensation, which shall, when applied to for that purpose, determine, upon the facts being presented to it, the proportion to be paid to or on behalf of each dependent according to the relative-dependency. Payment on behalf of infants shall be made to the surviving parent, if any, or to the statutory or testamentary guardian.

[3] $\frac{\text{contribution}}{\text{wages}} = \frac{25}{398} = 6.28\%$

spouse and [natural] [4] children who were actually a part of the decedent's household at the time of death, the compensation shall be such proportion of the scheduled percentage as the amounts actually contributed to them by the deceased for their support constituted of his total wages.... [*N.J.S.A.* 34:15–13(f)]

The statute thus deems Carol wholly dependent because she was "actually a part of the decedent's household at the time of death." Dawn, the decedent's stepchild, is conceded to be wholly dependent in fact. Stacy and Colleen, however, may not be considered wholly dependent unless they actually were.

Despite the language of the statute, our courts have not based children's dependency benefits solely upon the "amounts actually contributed to them by the deceased" because in some cases the deceased worker had deserted his family and then contributed little or nothing to their support. The decedent's desertion left his children without the benefit of the presumption of total dependency given to children who were "a part of a decedent's household" and also left them with little or no amount of actual contribution from the decedent on which to base a claim of dependency in fact. To ameliorate the plight of such children, the statutory status of a "wholly dependent" child was interpreted to be the legal status of dependency regardless of the amount the decedent actually contributed.

In *Santiago v. N.J. Fireworks Mfg. Co., Inc.,* 88 *N.J.Super.* 495 (App.Div.1965), the decedent's wife deserted him and their infant son in Puerto Rico. Thereafter the decedent came to New Jersey leaving the boy in the care of his parents. The decedent sent his father only $10 a week for the support of the boy and for the support of the decedent's father, mother, sister and two brothers. We held that as a matter of law the son was wholly dependent upon the decedent under the statute even though others were also supporting the child. *Id.* at 500. *See*

[4]The irrebuttable presumption of total dependency does not apply to stepchildren. *See Weinberg v. Todd Shipyards,* 97 *N.J.Super.* 289, 293–294 (App. Div.1967), certif. den., 51 *N.J.* 9 (1967).

also *Kolakowski v. Thomas Manufacturing Corporation*, 88 *N.J.Super.* 478 (App.Div.1965), certif. den., 45 *N.J.* 595 (1965).

In both cases we relied on *Comparri v. James Readding, Inc.*, 120 *N.J.L.* 168 (E. & A.1937). In that case the decedent deserted his wife and infant daughter. The wife obtained a court order requiring him to pay $5 a week for the child's support. The decedent was deeply in arrears when he was killed at work. The Court held:

> [T]he test is as to the dependency of a child upon the father. It is not governed in the slightest degree by the amount of money actually contributed to, or expended upon the child. It is undoubted that the law imposed upon the decedent the duty of fully and wholly maintaining his daughter.... There is nothing to indicate that this daughter was not legally and actually wholly dependent upon her father.... The undoubted fact that the father failed in his duty to provide for her, did not render the daughter any less dependent. By the term of the statute, dependency is presumed if the child is a member of the father's household, but, when a child under sixteen is without means to support herself, and a court of competent jurisdiction has found dependency and ordered the father to contribute weekly to her support and maintenance, it cannot logically be said that she is only a partial dependent.
>
> The test being dependency, and dependency having been legally determined as before stated, and nothing appearing to the contrary, the statute fixes the amount of the compensation without regard to the amount actually expended by the father on his daughter. [*Id.* at 170–171]

*Comparri* holds that as a matter of law an infant child of a deceased father is entitled to the compensation due a person wholly dependent on the father "without regard to the amount actually expended by the father" so long as there is "nothing appearing to the contrary."

There was evidence in *Comparri* that actually the mother fully supported the child. The Court, however, treated the mother's contribution as the contribution of one having no duty to support the child:

> As was said by the Supreme Court in *Fay v. John Waldron Corp.*, 117 *N.J.L.* 123, "the gratuitous help given by their aunt should not be a bar to their claim of total dependency if in fact they were totally dependent upon their father, * * *." So here, the fact that the mother may have spent more upon the daughter than the amount fixed by the court as necessary for her support would not change the situation. [120 *N.J.L.* at 170]

Over the years, the Legislature and courts have gradually rejected the doctrine that the father has the primary duty to support his child. In 1902 the Legislature first permitted a court to order a mother to support her child. *L.*1902, *c.* 157, § 19. In 1921 the Legislature adopted what is now *N.J.S.A.* 9:2–4, which for the first time charged both parents "equally" with their children's "care, nurture, education and welfare." See *Kopack v. Polzer*, 5 *N.J.Super.* 114, 116 (App.Div.1949), aff'd, 4 *N.J.* 327 (1950).

Until relatively recent years, a mother satisfied that duty by providing care and nurture and the father by paying for the child's education and welfare. In a dependency action brought by a widow who left the decedent because of his cruelty and was working to support herself when he died, the former Supreme Court, reflecting the mores of its day, said:

> But by working and helping herself and her husband she did not lose her legal status as a total dependent.
>
> [*Alexander v. Cunningham Roofing Co. Inc.*, 124 *N.J.L.* 390, 397–398 (Sup.Ct.1940), aff'd, 125 *N.J.L.* 277 (E. & A.1940)]

Today's mores are radically different. It can no longer be assumed that a working mother is in the labor market involuntarily because her spouse neglected to support her and their children. A recent Gallup Poll of women reveals that over half of the 72 percent who view marriage with children as the most satisfying way of life also prefer having a full-time job outside the home. *N.Y. Times*, May 12, 1985, p. 20. It is now commonplace for a mother to work to help support her family. The March 1984 census report indicates that 54% of children who are under 18 and members of a "married-couple family" have parents who are both in the work force. U.S. Department of Commerce, Bureau of the Census, *Household and Family Charateristics: March 1984, Series P–20, No. 398* at 171 (1985).

Our Supreme Court has recognized the changed place of women in many families. Speaking of a husband's duty to support his wife, the Court said:

> A closer look should also be taken at the supported spouse's ability to contribute to his or her own maintenance, both at the time of the original judgment and on applications for modification. The fact that our State's

alimony and support statute is phrased without reference to gender, *N.J.S.A.* 2A:34–23, will accomplish little if judicial decision making continues to employ sexist stereotypes. The extent of actual economic dependency, not one's status as a wife, must determine the duration of support as well as its amount. [Citations omitted].

Not only the realities of the marketplace, but also the constitutional guarantee of "the equal protection of the laws," *U.S. Const.*, Amend. XIV, compels this approach. It is no longer permissible to ground the law of domestic relations in the "'old notio[n]' that 'generally it is the man's primary responsibility to provide a home and its essentials.'" *Orr v. Orr*, 440 *U.S.* [268] at 279–280, 99 *S.Ct.* [1102] at 1112, 59 *L.Ed.*2d [306] at 319 [(1979)] (quoting *Stanton v. Stanton*, 421 *U.S.* 7, 10, 95 *S.Ct.* 1373, 1375, 43 *L.Ed.*2d 688, 692 (1975)). "No longer is the female destined solely for the home and the rearing of the family, and only the male for the marketplace and the world of ideas." *Orr*, 440 *U.S.* at 280, 99 *S.Ct.* at 1112, 59 *L.Ed.*2d at 319 (quoting *Stanton*, 421 *U.S.* at 14–15, 95 *S.Ct.* at 1377–1378) [Citations omitted]. The law must be concerned with the economic realities of contemporary married life, not a model of domestic relations that provided women with security in exchange for economic dependence and discrimination. This does not mean that relative economic dependence—when proven—is irrelevant to the determination of support obligations. But a court of equity cannot rely on antiquated presumptions; gender is no longer a permissible proxy for economic need. See *Orr*, 440 *U.S.* at 281, 99 *S.Ct.* at 1112, 59 *L.Ed.*2d at 320. The need for support must be assessed with a view towards the earning capacity of the individual woman in the marketplace. [*Lepis v. Lepis*, 83 *N.J.* 139, 155–156 (1980)]

■■ We adhere as we must to the holding in *Comparri* that a child's dependency on the decedent is a matter of legal status and is not necessarily determined by the decedent's "actual contribution" to the child's support. The extent of a particular child's legal dependency requires that a determination be made of the decedent's legal obligation to support the child. The Division of Worker's Compensation is charged under *N.J.S.A.* 34:15–13(g) with the duty to "determine, upon the facts presented to it, the proportion to be paid to or on behalf of each dependent according to the relative-dependency." In discharging that duty, the compensation judge must consider the same facts the same way a family part judge would in fixing the decedent's obligation to support the child at the time of his death. Thus, where the surviving parent was providing support for the child of a worker killed in a work-related accident, the child would ordinarily be entitled to only partial, not total,

dependency benefits unless the child was a member of the worker's household at the time of death.[5]

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

---

[5]Where some of the children who survive a decedent were a part of his household and some were not, *N.J.S.A.* 34:15–13(f) will often treat unfairly those who were not. For instance, where the decedent is survived by children of two marriages, all of whom were partially dependent upon him at his death, the children of the second marriage, because they were a part of his household at death, will be deemed wholly dependent, whereas the children of the first marriage will not. To avoid this inequity, the statutes of some states deem all children wholly dependent. Others deem children wholly dependent if they were actually at least partially dependent. *See* 2 *Larson, Workmen's Compensation,* § 62.30, pp. 11–62 to 11–64 (1983). Our holding in this case points up the need for similar action by our Legislature.