631 A.2d 1245

MARIA RIBEIRO COSTA-HUGHES, PETITIONER–
RESPONDENT, v. MULLEN CONSTRUCTION
COMPANY, RESPONDENT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued October 28, 1992—Decided December 4, 1992.

Before Judges GAULKIN, STERN and BROCHIN.

*Louis M. Masucci, Jr.* argued the cause for appellant (*Isaacson, Dougherty & Zirulnik,* attorneys; *Mr. Masucci,* on the brief).

*Robert A. Greenberg* argued the cause for respondent (*Ravich, Koster, Tobin, Oleckna, Reitman & Greenstein,* attorneys; *Kenneth S. Oleckna,* on the brief).

STERN, J.A.D.

Mullen Construction Company, decedent's employer, appeals from a judgment of the Division of Workers' Compensation that held that Susana Costa, the minor daughter of its deceased employee, is entitled to full statutory dependency benefits under *N.J.S.A.* 34:15–13. We affirm.

The narrow issue in this case relates to the amount of dependency benefits to which Susana is entitled. It is undisputed that when decedent and Susana's mother, Maria Costa–Hughes, were divorced, the mother was granted custody of Susana. It is also undisputed that Susana was not living as "a part of the decedent's household at the time of [the decedent's] death." *N.J.S.A.* 34:15–13f. Moreover, the uncontroverted testimony was that at the time of his death decedent was paying $80.00 each week for the support of Susana. The relevant testimony concerning Susana's support and needs was presented by her mother:

Q. And don't you in fact provide support for Susana Costa?

A. I provided support at that time.

Q. No, now.

A. Now?

Q. Do you provide support now for her?

A. Yes. I am the one who is providing support, and my husband is also.

Q. And what support do you provide for her?

A. Any clothes for her. She is in school. She needs food. She needs to eat. She needs education. What I want to give her, that is what I want to give her.

THE COURT: Medical bills, I assume, if she needed anything medically.

Q. Do you provide and pay for her food?

A. Me and my husband.

Q. And do you and your husband provide clothes for her?

A. Yes.

Q. And do you and your husband provide education for her?

A. Yes, sir.

Q. And you and your husband provide the roof over her head; is that correct?

A. Yes.

Q. And the only amounts you received from Joaquim Costa when he was alive was $80 per week?

A. Yes, sir. That is correct.

Q. How long has Susana Costa lived with you?

A. Since I left home. She was always with me since November of 1988.

Q. Do you have an estimate of how much you spend on Susana Costa each week for support?

A. I don't have exactly how much.

Q. Approximately?

A. I don't know how much I spend on Susana, but just for food, clothes, and medicine if I need to take her to the doctor, I would say approximately $80 a week.

Q. And Susana Costa was not a member of the household of Joaquim Costa at the time of his death, was she?

A. No.

Q. She was a member of your household; is that correct?

A. Yes.

The judge's opinion can be read to find that the $80 paid weekly by decedent was the same $80 used by the mother to support Susana. He said:

> In truth, Susana was being supported by her father. There was a legal order requiring the father to pay support.[1] She was actually getting that support. The amount of support she received was $80 a week. $80 a week is a significant amount to support one child, just to take care of her own food, her own clothes, her own self, regardless of how much the father paid in an overall amount. $80 a week, which is over $320 a month, is a significant amount of support for one infant child. There is no indication that this amount was not more than sufficient in and of itself to support the child.

As Judge Brochin notes in his dissent, the testimony does not clearly reflect that the $80 paid weekly by decedent for Susana's support was the same total of approximately $80 a week it cost the mother to support her, and the trial judge did not find that fact controlling. He stated further:

> Susana is entitled to support from the father. Susana may also be entitled to full support from her mother. This support shouldn't be in a matter of percentage. She is entitled to full support from each of her parents.

> . . . .

> Her father had no other dependents. There was no one she was competing with. And even if there was, she still would be entitled to full support from her father,

---

1 The record before us does not contain the support order referred to by the trial judge.

even if she is being supported by her mother, or even if she is entitled to full support by the mother.

*Comparri v. James Readding, Inc.*, 120 *N.J.L.* (35 Gummere) 168, 199 *A.* 66 (E & A 1938), is the leading binding precedent as an expression of the then highest court in the state, and as noted in *Stone v. New Jersey Highway Authority*, 202 *N.J.Super.* 129, 135, 493 *A.*2d 1326 (App.Div.1985), "*Comparri* holds that as a matter of law an infant child of a deceased father is entitled to the compensation due a person wholly dependent on the father 'without regard to the amount actually expended by the father' so long as there is 'nothing appearing to the contrary.' " *Stone* nevertheless continues:

> We adhere as we must to the holding in *Comparri* that a child's dependency on the decedent is a matter of legal status and is not necessarily determined by the decedent's "actual contribution" to the child's support. The extent of a particular child's legal dependency requires that a determination be made of the decedent's legal obligation to support the child. The Division of Worker's Compensation is charged under *N.J.S.A.* 34:15–13(g) with the duty to "determine, upon the facts presented to it, the proportion to be paid to or on behalf of each dependent *according* to the relative-dependency." In discharging that duty, the compensation judge must consider the same facts the same way a family part judge would in fixing the decedent's obligation to support the child at the time of his death. Thus, where the surviving parent was providing support for the child of a worker killed in a work-related accident, the child would ordinarily be entitled to only partial, not total, dependency benefits unless the child was a member of the worker's household at the time of death.
>
> [202 *N.J.Super.* at 137–138, 493 *A.*2d 1326 (footnote omitted).]

We find it unnecessary to consider the impact of *Stone* in other circumstances or whether *Stone* truly adheres to the dictates of *Comparri*. Suffice it to say that *Comparri* requires affirmance in this case, at least in the absence of more convincing proofs concerning the mother's contribution to the child's support and in the absence of any proofs that a court order, judgment of divorce or property settlement agreement imposed an obligation on the mother to provide a portion of Susana's support. Thus, on this record we agree with the trial judge that, for purposes of workers' compensation dependency benefits, Susana must be deemed fully dependent upon her father. *See also* and *compare, Santiago v. N.J. Fireworks Mfg. Co., Inc.*, 88 *N.J.Super.* 495, 212 *A.*2d 796

(App.Div.1965); *Kolakowski v. Thomas Mfg. Corp.*, 88 *N.J.Super.* 478, 212 *A.*2d 786 (App.Div.1965).

In light of the dissenting opinion we add that it may be true that dependency benefits of $309 a week would exceed the child's needs and expenses at present, but independent of the fact that actual need is not a factor embodied in the long standing legislation, the reality is that the child's needs and expenses will increase as she gets older and with inflation. In any event, the issue before us is only what the Legislature intended with respect to workers' compensation dependency benefits and the Legislature has not significantly or substantially amended the controlling statute since *Comparri* was decided.

Accordingly, we affirm the determination of the Division of Workers' Compensation that Susana Costa is entitled to full dependency benefits.

BROCHIN, J.A.D. (dissenting).

In my view, the language and purpose of *N.J.S.A.* 34:15–13 and its interpretation by *Comparri v. James Readding, Inc.*, 120 *N.J.L.* (35 Gummere) 168, 199 *A.* 66 (E. & A.1937) and *Stone v. New Jersey Highway Authority*, 202 *N.J.Super.* 129, 493 *A.*2d 1326 (App.Div.1985), require us to hold that Susana was only partially dependent on her father for her support. I therefore respectfully dissent from the court's opinion in this matter.

The testimony of Ms. Costa–Hughes and the findings of the Judge of Workers' Compensation are both ambiguous on the question of whether the $80 a week which Joaquim Costa paid for his daughter's support from the time of his divorce until his death constituted the full cost of her maintenance. If resolution of that issue were dispositive of the outcome of this appeal, I would remand this matter to the Division of Workers' Compensation for a further hearing and determination of the question. However, in the light of *Comparri* and *Stone,* whether Susana was fully or only partially dependent on her father depends solely on a determination whether or not Ms. Costa–Hughes shared Mr. Costa's legal

obligation to support their daughter. As *Stone* recognizes, a minor child almost invariably has a legal right to financial support from both parents. No facts have been shown here to make that general rule inapplicable to the present case. Consequently, Susana was only partially dependent on her father within the meaning of *N.J.S.A.* 34:15–13f.

Since Mr. Costa earned gross wages of $618 a week and contributed $80 a week to his daughter's support, her dependency benefits will be 50 percent of his wages or $309 a week if she was fully dependent on her father and 50 percent of his contribution or $40 a week if she was only partially dependent on him. *Ricciardi v. Damar Products Co.*, 45 *N.J.* 54, 64–5, 211 *A.*2d 347 (1965). As *Ricciardi* points out, "It seems odd that a dependent should receive [the scheduled percentage] of *total wages* if the dependent subsisted fully on the contribution but only [the scheduled percentage] of the *contribution* if the dependency on the same contribution was less than total, but that is our statutory scheme...." *Id.* at 65, 211 *A.*2d 347.

The schedule of percentages in *N.J.S.A.* 34:15–13, whether applied to total wages or to contribution, reflects an evident determination by the Legislature that the compensation to be paid a surviving dependent of a deceased worker should ordinarily replace only part of the financial support which the survivor has lost. Even in an intact household in which both parents are working, the household members are likely to be dependent on the full amount of the take-home pay of both wage earners and they are certainly likely to be dependent on more than the scheduled percentage of the wages of the deceased wage earner. *See e.g. Ricciardi v. Damar Products Co., supra,* at 62–3, 211 *A.*2d 347. But treating a surviving minor child or children of divorced parents as fully dependent on the deceased father will almost invariably result, as it does in this case, in the workers' compensation benefits exceeding the weekly support actually contributed by the decedent during his lifetime. See the Supreme Court's current Schedule of Child Support Guidelines Percentages which

shows that total child support ordinarily payable by both parents will never reach 50 percent of the parents' *combined* weekly *available* income for a family of three or fewer children. The majority's interpretation of *N.J.S.A.* 34:15–13 results in an excessive payment to the decedent's daughter and frustrates the legislative intent that compensation benefits should only partially replace the survivors' financial loss.

I would therefore hold that Susana was only partially dependent on her father for purposes of *N.J.S.A.* 34:15–13.